**Dorothy E. ULAK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 68–59–S.**

United States District Court,
S. D. California.

May 15, 1970.

Edward V. Brennan, Lerg & Brennan, San Diego, Cal., for plaintiff.

Harry D. Steward, U. S. Atty., San Diego, Cal., for defendant.

MEMORANDUM OPINION

SCHWARTZ, Chief Judge.

This is an action for refund of federal taxes paid in the tax years 1964 and

---

3. Pa.Stat. tit. 15, § 2011, subd. C (Supp.1972).

1965. The following facts are not disputed by the parties.

Plaintiff was employed by the County as a child welfare supervisor. In the year 1964, she was awarded educational stipends of $4,600.00 for the academic years 1964 and 1965, beginning in September of each year and ending in June of the following year. These stipends were awarded to plaintiff under programs established by the California Department of Social Welfare and the San Diego County Department of Public Welfare for study in social work at San Diego State College.

In August of 1964 and 1965, shortly prior to the beginning of each academic year, the plaintiff entered into contracts with the state department of social welfare and the county department of public welfare with respect to the terms of the aforesaid stipends. These contracts required plaintiff to continue in employment with the county in a public assistance program for at least one additional year upon completion of each academic year of training. The plaintiff also agreed to. repay the amounts received pursuant to the contracts in the event that she failed to return immediately to her employment with the county upon completion of her courses at San Diego State College. The plaintiff received her Masters Degree in June of 1966 and thereafter returned to her employment with the county in accordance with the terms of her contracts.

On her federal income tax return for the year 1964, the plaintiff included $1,796.16 disbursed to her by San Diego County as gross income subject to taxation. She subsequently filed an amended return for 1964, claiming a refund of $246.00 on the ground that the said amount was non-taxable. On her federal income tax return for the year 1965, the plaintiff excluded $4,789.76 disbursed to her by San Diego County from gross income, and claimed a refund of $1,041.37 in income taxes withheld from her wages. Upon audit, it was determined by the Internal Revenue Service that the said amounts were properly includible in

gross income and that, along with other adjustments, the plaintiff had underpaid income taxes of $136.46 for 1964 and $918.86 for 1965. The plaintiff's overpayment for 1964 ($122.51) was credited to the 1964 deficiency. However, the plaintiff has not paid the interest owed on the said deficiency.

The only issue involved here is whether the payments were taxable income or excludable scholarship funds. There are no disputes as to any material facts, so that summary judgment is proper at this time.

Section 117 of the 1954 I.R.C. states in relevant part:

"In the case of an individual, gross income does not include—

(1) any amount received—

(A) as a scholarship at an educational institution (as defined in section 151(e) (4), or

(B) as a fellowship grant,

including the value of contributed services and accommodations; and

(2) any amount received to cover expenses for—

(A) travel,

(B) research,

(C) clerical help, or

(D) equipment,

which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient."

Treasury Regulation § 1.117–4 provides that funds received as compensation for services or primarily for the benefit of the grantor are not to be treated as scholarships.

The leading recent case in the area is Bingler v. Johnson, 394 U.S. 741, 89 S. Ct. 1439, 22 L.Ed.2d 695 (1969). There, employees of Westinghouse received "educational stipends" for studies done while on leave from work at Westinghouse, which stipends were jointly financed by Westinghouse and the A.E.C. The "stipend" was a certain percentage of the normal salary, and while on leave

the employee retained his seniority status and received insurance, stock option privileges and other employee benefits. The employee was required to submit progress reports, and most importantly, he must sign an agreement to the effect that he will return to work at Westinghouse following the completion of his "leave" period.

Under its accounting system Westinghouse withheld federal income tax from the amounts given to the parties, and listed these amounts as "indirect labor" expenses.

In addition, before these employees could participate in this program, the topic for their doctoral dissertation had to be approved by Westinghouse and the A.E.C.

The instant case is in all important respects identical to the Bingler v. Johnson case. The "stipends" here are financed jointly by the federal and state governments and are administered by San Diego County, by whom plaintiff is employed. The "stipend" is in the form of a fixed amount for a nine month period ($4,600.00) and ordinarily the employees are required to return to work during the summer months. While on leave the plaintiff retained her civil service classification, seniority, sick leave and vacation rights, and continued her participation under the County retirement plan.

Plaintiff here was not required to submit progress reports during her leave, but was required to return to the employ of the county for one year for every year of leave granted.

The county withheld from these payments requisite amounts for income taxes, social security and retirement benefits.

Before the applicant for these stipends can qualify, he must be approved by the County Welfare Director. The studies must be in the field of social work, which, of course, is related to the work of plaintiff here.

In considering all of the similarities above, we must delineate the importance of the requirement that recipients return to work for the County after completion of leave. In Bingler v. Johnson, the court stated, at p. 757, 89 S.Ct. at p. 1448:

"And, most importantly, Westinghouse unquestionably extracted a quid pro quo. The respondents not only were required to hold positions with Westinghouse throughout the 'work-study' phase of the program [which was a primary phase of the Westinghouse program which the County does not have], but also were obligated to return to Westinghouse's employ for a substantial period of time after completion of their leave.[31] The thrust of the provision dealing with compensation is that bargained-for payments, given only as a "quo" in return for the quid of services rendered—whether past, present, or future—should not be excludable from income as 'scholarship' funds."

In footnote 31, page 757, 89 S.Ct. page 1448, the court continues:

"The contract's provision that employees who avail themselves of educational leave will be assigned duties "commensurate with [their] education and experience," and compensated at rates "commensurate with" those duties, is hardly sufficient to avoid the clear inference that their grants are fully bargained for and in the nature of compensation. *The program is featured in Westinghouse's recruiting efforts as a benefit attractive to many potential employees. Moreover, as suggested in the text, participation in the program undeniably means giving up the right to take more remunerative employment elsewhere for a considerable period of time.* Had the company modified its program so that the amounts of the "fellowship" grants were spread over the years preceding and following the educational leave—as increments to the respondents' salary, set aside in a company-administered "educational fund"—there could be little doubt that those amounts would have represented com-

pensation. We see no persuasive reason why a different tax result should be reached under Treas.Reg. § 1.117–4(c) on the actual facts involved here." (emphasis added)

Plaintiff's main contention is that she did not receive these payments from her employer which was the County, but rather received these funds from the State of California. Hence, she argues that these payments were not "primarily for the benefit of the grantor" as defined in Treas.Reg. § 1.117–4.

The term "grantor" is not defined in the I.R.C. The plaintiff claims that the State of California is the "grantor".

Exhibit 5 to the Stipulation of Facts between the parties hereto, filed on January 23, 1970 sets forth portions of the State Department of Social Welfare (S. D.S.W.) Manual issued July 1, 1965, which relates to the Graduate Education Stipend Program. From this manual, it becomes obvious that the State considers itself as the party being benefited by these programs as well as the counties themselves. On page 1 of Exhibit 5, it states:

"W & I Code § [10900] and the federal approved State Child Welfare and Public Assistance Staff Development Plan authorize the California State Department of Social Welfare to set up and administer an education stipend plan for social work education of county welfare department employees and college graduates for employment in the public assistance and child welfare service programs in order to enable the *state* to administer the public welfare programs more effectively." (emphasis added)

The remainder of this page of the Exhibit 5 is equally enlightening. In addition, the recent case of Haley v. Commissioner, 54 T.C. 642 (March 26, 1970) seems virtually dispositive of this problem. There, on facts which are identical to the facts of the instant case, the Tax Court held that such stipends as were received by plaintiff here were taxable as income. The Tax Court concluded that the state was the "grantor" and that because of the relationship between the county and state boards in the Oregon state welfare system, the stipends were "primarily for the benefit of the grantor" as defined in Treas.Reg. § 1.-117–4. The same conclusion can be reached here. The state of California:

(1) regulates all activities of the County boards where state or federal funds are used (W & I Code § 10800);

(2) regulates personnel standards where federal and state funds are used (W & I Code §§ 10900–1);

(3) sets minimum salary schedules for county personnel (W & I Code § 10901; 37 Ops.Atty.Gen. 176);

(4) provides 67.5% of the funds required by each county for the county's welfare programs (see e. g. W & I Code § 11450).

It would seem that based on the *Haley* case, supra, and on the similarities between the Oregon welfare system and the California welfare system, the payments here must be considered for the benefit of the "grantor". The relationship between the county and state welfare operations in California makes such conclusion inescapable.

■ In an action such as this plaintiff has the burden of establishing the right to have funds considered to be tax-exempt. Woddail v. Commissioner of Internal Revenue, 321 F.2d 721 (10 Cir., 1963). Plaintiff has failed to sustain her burden here.

Accordingly, it is the judgment of this court that defendant's motion for summary judgment be granted and that plaintiff's motion for summary judgment be denied. Counsel for defendant shall file the appropriate findings of fact, conclusions of law and judgment in accordance herewith.