OPINION
{¶ 1} Appellant, Nicholas S. Cerutti, appeals from the August 16, 2002 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for abduction and possession of cocaine.
 {¶ 2} On April 4, 2002, appellant was indicted on one count of kidnapping, a felony in the first degree, in violation of R.C.2905.01(B)(2), with an accompanying firearm specification pursuant to R.C. 2941.145; one count of possession of cocaine, a felony in the fifth degree, in violation of R.C. 2925.11, with an accompanying firearm specification pursuant to R.C. 2941.141; and one count of abduction, a felony in the third degree, in violation of R.C. 2905.02(A)(2), with an accompanying firearm specification pursuant to R.C. 2941.145.
 {¶ 3} Appellant waived the right to be present at the arraignment and pled not guilty and not guilty by reason of insanity to the charges as set forth in the indictment on April 5, 2002. In light of the not guilty by reason of insanity plea, appellant was referred for a mental competency evaluation. On May 20, 2002, the court conducted a hearing on appellant's competency. Appellant stipulated to his competency to stand trial, based upon the findings in the written competency report.
 {¶ 4} On April 15, 2002, appellant filed a motion to suppress, alleging that the Willoughby Police Department had allegedly conducted an unconstitutional warrantless search of appellant's residence. A hearing on the motion was held on May 20, 2002. Officers Huetter and Fitzgerald testified at the hearing, as well as Christen DeVito ("Christen"), the victim. The trial court subsequently issued a judgment entry on June 25, 2002, concluding that it was granting the motion in part as it related to the box of ammunition seized from a drawer in the bedroom, but denying the motion in part, as it related to the handgun and crack cocaine which the court concluded were in plain view and properly seized.
 {¶ 5} The matter proceeded to a jury trial, commencing on July 9, 2002. The state called Christen, the investigating officers, a firearms examiner and a toxicologist from the Lake County Regional Forensic Laboratory. At the close of the state's case, appellant moved for a judgment of acquittal with respect to all charges, pursuant to Crim.R. 29. The trial court overruled this motion, and the defense rested without calling any witnesses or presenting any evidence.
 {¶ 6} On July 11, 2002, the jury convicted appellant of possession of cocaine with the accompanying firearm specification and abduction with the accompanying firearm specification. Appellant was acquitted of the kidnapping charge with the firearm specification. Following the guilty verdicts, appellant renewed its Crim.R. 29 request pursuant to a written motion. A sentencing hearing was held on August 12, 2002. At the outset, the trial court overruled appellant's post-trial Crim.R. 29 motion.
 {¶ 7} The state's evidence established the following facts at trial: appellant was involved in a romantic relationship with Christen from May 2000 to October 2001. The two met while attending Alcoholics Anonymous ("AA"), as they both had ongoing drug and alcohol issues. They lived together and had a child during that time. After the relationship ended, Christen entered into a relationship with Anthony DeVito ("Anthony"). Christen and Anthony were married on January 30, 2002. Christen continued attending AA meetings, as did appellant, and the two frequently would be at the same meetings.
 {¶ 8} On February 23, 2002, Christen attended a meeting in Eastlake. Appellant was at that same meeting. At the conclusion of the meeting, appellant left while Christen remained behind to help clean up, as was her duty as chairperson of that evening's meeting. As Christen exited the building and approached her car, she noticed a small bag of infant clothes that had been left beside her vehicle. She also noticed appellant standing thirty to forty feet away from her car. He began walking toward her holding a handgun. Appellant indicated that he needed to talk to her. As he said this, he pointed the gun towards his stomach. Christen tried to persuade appellant against harming himself. He told her that she needed to come back to his place so they could sort things out. Christen agreed to go, and appellant ushered her into his car.
 {¶ 9} As they rode in the car, appellant told Christen that he was "going crazy" and that he really need to talk to her. The two began conversing about their past relationship and Christen's recent marriage. Christen testified that appellant seemed "desperate." The two arrived at appellant's home in the nearby city of Eastlake. When they entered appellant's home, they sat in the living room. As the two talked, appellant walked around the room lighting candles. Appellant had placed the handgun on a nearby table. Christen testified that she was very nervous and that appellant offered her vodka, which she accepted. Christen also testified that appellant offered her crack cocaine and she agreed to smoke it, although she did not remember appellant smoking it with her. The gun remained on the nearby coffee table.
 {¶ 10} Christen testified that they did not argue, but continued talking. Appellant discussed their relationship and the possibility of them reuniting. The two then went into the bedroom and continued to discuss their relationship. Christen testified that, at that point, she wanted to be there with appellant because she felt they needed to discuss things, and she needed to be with appellant because she was worried he would kill himself and he was the father of her baby.
 {¶ 11} Christen testified that she thought it would be a good idea to call her husband, Tony, and tell him where she was so he wouldn't worry about her. She was also afraid that Tony would assume where she was, arrive at the home and react in a violent manner. Christen telephoned her husband and told him that she was at appellant's house and they were talking. She told him she would be home in the morning. She handed the receiver to appellant because she thought he wanted to talk to Tony but appellant just hung up the telephone.
 {¶ 12} A short time later, an emergency 9-1-1 call was received by the Willoughby Police Department. An audiotape of the call was accepted into evidence at the suppression hearing. In that call, Christen's husband, Tony, told the dispatcher that he had just received a phone call from his wife. He stated that his wife had told him that she was being held against her will at her ex-boyfriend's house.
 {¶ 13} The dispatcher then issued a radio transmission, stating that a woman was being held against her will at 38573 Ninadell Avenue. There was no information given regarding any possible weapon. All police units were dispatched to the call and several officers arrived at the scene. Both ends of Ninadell Avenue were blocked off with patrol cars, and several police officers surrounded the house. Officers Fitzgerald and Huetter approached the back door of the residence. They testified that they did not hear any noise other than the sound of cupboard doors opening and closing. They noted that the house was illuminated by a single light in one room. They opened the storm door, and knocked loudly on the interior door. A person became visible through the door window, and Officer Fitzgerald yelled, "Police, open up." There was no immediate response. The officers again noted a male subject in the door window, standing approximately six inches from the door, who suddenly ran towards the front of the house.
 {¶ 14} Officer Fitzgerald then forced the door open and he and another officer subdued appellant while Officer Huetter proceeded into a bedroom where Christen sat crying on the bed. Upon entering the bedroom, Officer Huetter noted a handgun lying in plain view on the bedroom floor near where Christen was sitting. He picked up the gun and secured it on his person. Upon further inspection, he noted that the closet door was open and on the floor of the closet was an ashtray in which was a homemade crack pipe and white rocks. The substance ultimately tested positive for crack cocaine. Officer Huetter seized the crack cocaine as well as a box of ammunition located in a drawer in the bedroom. Both Christen and appellant were taken to the Willoughby Police Station for questioning.
 {¶ 15} Pursuant to the August 16, 2002, judgment entry, the trial court sentenced appellant to six months imprisonment on the possession of cocaine conviction, and one year imprisonment on the abduction conviction, to be served concurrently. Appellant was sentenced to the mandatory one-year and three-year prison terms for the firearm specifications. The firearm specifications merged for sentencing, thereby resulting in a three-year prison term with respect to both specifications. The firearm specifications were to be served consecutively to the other convictions, for a total of four years imprisonment. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 16} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion to suppress in violation of his right to be free from unreasonable searches and seizures as guaranteed by Section 14, Article 1 of the Ohio Constitution and the Fourth and Fourteen (sic) amendments to the United States Constitution."
 {¶ 17} "[2.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A)."
 {¶ 18} "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 19} In his first assignment of error, appellant contends that the trial court erred in denying his motion to suppress.
 {¶ 20} The presence of exigent circumstances justifies a warrantless entry into a residence. State v. Applegate (1994),68 Ohio St.3d 348, syllabus. In responding to an emergency call, a police officer need not possess actual knowledge of specific facts, and may rely upon a dispatch. Maumee v. Weisner (1999),87 Ohio St.3d 295, 297. The underlying rationale for this principle is that effective law enforcement can only be conducted when officers can react to information transmitted from one officer to another, and are able to react quickly to a situation without cross-examining their fellow officers about underlying factual nuances of every incident. Id. Thus, the key to the admissibility of evidence is not whether the officer who relied upon the dispatch was aware of the specific facts but, rather, whether the officer who issued the dispatch possessed a reasonable suspicion to investigate. Id., citing United Statesv. Hensley (1985), 469 U.S. 221, 231. Therefore, the state must demonstrate at a suppression hearing that the facts upon which the dispatch was predicated justified a reasonable suspicion of criminal activity. Maumee, at 298.
 {¶ 21} Where, as in the instant case, the information possessed by the police was solely from an informant's tip, the determination of reasonable suspicion is limited to an examination of the weight to be given the tip and the reliability of that tip. Id. at 299. It is well-settled that informants are of three classes: the anonymous informant, the known criminal informant who has provided previous reliable tips, and the identified citizen informant. Id. at 300. Courts have routinely recognized that the identified citizen informant possesses the greatest reliability. Id. The anonymous and criminal informant generally possess descending levels of credibility and, thus, a stronger shower of an indicia of reliability is required. Id.
 {¶ 22} In the case sub judice, the police were dealing with an identified citizen informant. Courts are generally more lenient in the amount and nature of information needed to identify an informant. Id. The caller identified himself as the victim's husband and gave his name. Moreover, he gave the police his location, near appellant's house at a phone booth. Thus, the informant in this case is clearly identified and must be credited with the highest degree of reliability.
 {¶ 23} In light of the informant's high degree of reliability, we must address the reliability of the tip itself. Id. at 302. Generally, personal observation by the informant possesses the highest indicia of reliability, rather than a second-hand description. Id. In the instant case, the state presented evidence in the form of a tape recording of the 9-1-1 call which the informant placed the call to the police after speaking with his wife. Thus, although he did not witness first-hand his wife accompany appellant in his vehicle while in possession of the gun, he spoke with his wife directly in an abrupt call she made from appellant's house. We conclude, based on the foregoing facts, that the tip was highly reliable.
 {¶ 24} The remaining issue is whether the tip itself was sufficient to justify a reasonable suspicion of criminal activity. The informant told police that his wife had told him that she was being held against her will at her ex-boyfriend's home. Thus, the police were made aware that a woman was somehow being held or restrained against her will at the home of her ex-boyfriend. The potential for criminal activity based upon these facts is apparent. Moreover, at the suppression hearing, the responding officer testified that he recognized appellant's address, as he had responded to prior domestic violence calls there in the past. Thus, based upon the dispatch and the other factual knowledge the officers possessed, the tip itself was sufficient to justify reasonable suspicion of criminal activity.
 {¶ 25} Furthermore, once the responding officers arrived at the scene, subsequent events occurred which imbued the officers with probable cause to justify a warrantless search. There are judicially recognized exceptions to the requirement of obtaining a search warrant: (1) a search incident to a lawful arrest; (2) consent which waives constitutional rights; (3) the stop and frisk doctrine; (4) hot pursuit; (5) probable cause to search, and the presence of exigent circumstances; or (6) the plain view doctrine. State v. Akron Airport Post No. 8975 (1985),19 Ohio St.3d 49, 51. The state asserts, and we agree that exigent circumstances were present in the case at issue.
 {¶ 26} "A warrantless police entry into a private residence is not unlawful if made upon exigent circumstances, a `specially established and well-delineated exceptio[n]' to the search warrant requirement." Applegate, supra at 349, quoting Katz v.United States (1967), 389 U.S. 347, 357. Exigent circumstances provide justification for warrantless entry into a private residence include the need to protect or preserve life or avoid serious injury. Mincey v. Arizona (1978), 437 U.S. 385,392-393.
 {¶ 27} In the instant case, the responding officers testified that after the police had blocked off the street and "pounded" on the back door of appellant's residence for approximately two to five minutes, they noticed a male figure in the door window, standing approximately six inches from them. They announced, "Police, open up!" The male figure in the window then suddenly ran off in the opposite direction toward the front of the house. The officers could hear no sounds coming from the residence other than opening and shutting doors and cupboards, however, armed with the information that a woman was being held against her will in the home and after observing the male subject running away from the officers at the door, the police possessed probable cause to enter the home based upon exigent circumstances.
 {¶ 28} Upon entry in the home, the officers subdued appellant and went to find Christen. They located her in the bedroom with the gun lying on the floor next to her and what appeared to be a crack pipe and rocks of crack cocaine in an ashtray on the floor of the closet, the door of the closet being open. Appellant objected to the seizure of the gun and the crack cocaine. However, these items were in plain view once the officers entered the room. Providing the initial entrance into the residence is lawful, the plain view doctrine regarding possible contraband observed by law enforcement takes effect. State v. Williams
(1978), 55 Ohio St.2d 82; Coolidge v. New Hampshire (1971),403 U.S. 443. Thus, we conclude that as the gun and the crack cocaine were in plain view once the officers entered the residence lawfully based upon exigent circumstances, the trial court did not err in denying appellant's motion to suppress these items. Furthermore, the trial court correctly granted appellant's motion to suppress the box of ammunition that the officers recovered from a drawer in the bedroom, as it was not in plain view.
 {¶ 29} Therefore, we conclude that, armed with the dispatch which was based on this information from a highly reliable informant, coupled with the events which transpired upon the officers' arrival at the home, the police possessed reasonable suspicion to investigate possible criminal activity and probable cause to search the residence for contraband Therefore, appellant's first assignment of error is without merit.
 {¶ 30} In his second assignment of error, appellant contends that the trial court erred in denying his Crim.R. 29 motion for acquittal. Appellant was convicted of two offenses, possession of cocaine and abduction, both with accompanying firearm specifications. On appeal, appellant does not challenge the sufficiency of the evidence relating to the firearm specification accompanying the abduction conviction. Thus, we will address only the remaining three convictions.
 {¶ 31} The defense enters a Crim.R. 29 motion for acquittal to challenge the sufficiency of the evidence presented. State v.Talley (Sept. 25, 1998), 11th Dist. No. 97-L-169, 1998 Ohio App. LEXIS 4526, at 7. A judgment of acquittal on a Crim.R. 29 motion should only be entered by the trial court, "where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt." State v. Sealey, 11th Dist. No. 2002-L-100, 2003-Ohio-6697, at ¶ 38.
 {¶ 32} R.C. 2925.11, the statute codifying possession of cocaine, reads:
 {¶ 33} "No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 34} Appellant was also convicted of R.C. 2905.02(A)(2) which reads, in pertinent part:
 {¶ 35} "[n]o person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to, or place the other person in fear[.]"
 {¶ 36} Appellant contends that the state did not prove beyond a reasonable doubt that the substance recovered was cocaine, that he possessed a handgun while he possessed cocaine, or that the force requirement or fear requirement was met to sustain the abduction conviction.
 {¶ 37} Regarding appellant's contention that the substance recovered was not cocaine, the state presented the testimony of Darlene Yee, a forensic chemist and toxicologist at the Lake County Crime Laboratory. Yee testified as to the positive result she obtained when she tested the substance recovered from appellant's residence. Appellant argues that the substance was not tested a second time, thereby foreclosing the possibility of Yee obtaining a false positive. We are not persuaded by this argument. Yee testified that she analyzed the substance in accordance with the laboratory's policies and procedures, and the substance tested positive for crack cocaine. Thus, in viewing the evidence in a light most favorable to the prosecution, we conclude the state presented sufficient evidence that the substance recovered from appellant's home was cocaine.
 {¶ 38} Next, appellant contends that the state did not prove beyond a reasonable doubt that he was in possession of a handgun while in the possession of cocaine. Appellant was convicted of a one-year firearm specification which accompanied both the possession of cocaine conviction and the abduction conviction. In order to obtain a conviction for the firearm specification along with the possession of cocaine conviction, the state had to prove beyond a reasonable doubt that appellant "had a firearm on or about the offender's person or under the offender's control while committing the offense." See R.C. 2941.141(A).
 {¶ 39} At trial, Christen testified that appellant had been in possession of a handgun the entire evening, including when he offered her the crack cocaine. Moreover, the state presented testimony by Sergeant Sevel, who stated that appellant had admitted in an interview after his arrest that he had been in possession of both the crack cocaine and the firearm on the evening in question. Again, after viewing this evidence in a light most favorable to the prosecution, we conclude that the state presented sufficient evidence that appellant had been in possession of a firearm while in possession of the crack cocaine.
 {¶ 40} Finally, appellant avers that the state did not prove beyond a reasonable doubt that appellant had used force or threat or that the victim was placed in fear or risk of physical harm in order to sustain the abduction conviction.
 {¶ 41} The statute requires that appellant used force or threat. At trial, the state presented evidence of the latter, to wit: that appellant used threat and not force to abduct the victim. The trial court defined threat as "a direct or indirect threat sufficient to overcome the will of Christen DeVito." The state presented evidence that Christen had intended on going home after the AA meeting on the night in question. However, Christen testified that appellant approached her with a gun as she was walking to her vehicle. Christen testified that she saw the gun and that appellant had it pointed at his own stomach. Christen also testified that appellant told her she needed to get in the car and come with him and "nothing good could come of this." She testified that at this point she gave appellant her car keys and went with him. This evidence was sufficient to prove beyond a reasonable doubt that Christen accompanied appellant to his home through the appellant's use of implicit threat.
 {¶ 42} Appellant also contends that the state did not present sufficient evidence that Christen was placed at risk of physical harm or in fear. We disagree. Christen testified at trial that appellant kept the handgun near him the entire evening. She also testified that he appeared extremely distraught and depressed about the way things had unfolded between the two of them and that he wanted things to change and for her to reunite with him. She testified that she felt he was desperate and that she told him she had to go home but that he did not want her to leave. Moreover, Christen's husband testified that when he spoke to her on the phone she seemed "scared" and "shaky." When viewing the foregoing evidence in a light most favorable to the prosecution, we conclude that sufficient evidence was presented to prove beyond a reasonable doubt that Christen was placed in fear and at risk of physical harm.
 {¶ 43} Therefore, based on the foregoing, we conclude that the state presented sufficient evidence to sustain appellant's convictions, and the trial court did not err in overruling appellant's Crim.R. 29 motion. Appellant's second assignment of error is without merit.
 {¶ 44} In his third assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence.
 {¶ 45} "`In determining whether the verdict was against the manifest weight of the evidence," (* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered (* * *).'" (Citations omitted.)" State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5863, at 14-15.
 {¶ 46} A judgment of the trial court should be reversed as being against the manifest weight of the evidence in only the most exceptional cases where the evidence weighs heavily against a conviction. State v. Thompkins (1997), 78 Ohio St.3d 380,387. Moreover, the weight to be given the evidence and the credibility of the witnesses are for the trier of fact to decide.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph of the syllabus.
 {¶ 47} Although appellant alleges a manifest weight argument, in his brief he makes the same contentions as under the second assignment of error relating to sufficiency. However, appellant's arguments are equally unpersuasive in the manifest weight context. As discussed in the aforementioned analysis, the state presented a multitude of evidence to support a jury finding, beyond a reasonable doubt that appellant possessed cocaine, while also possessing a firearm, and that he used threats and placed the victim in fear or risk of physical harm to sustain each of the convictions.
 {¶ 48} Therefore, pursuant to Schlee, in reviewing the evidence and credibility of the witnesses, we conclude that appellant's convictions were not against the manifest weight of the evidence. Appellant's third assignment of error is without merit.
 {¶ 49} Based on the foregoing, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Christley, J., concurs.
O'Neill, J., dissents with dissenting opinion.