OPINION
{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from the judgment of the Ashtabula County Court of Common Pleas, partially granting defendant-appellee, Anthony J. Pape's motion to suppress. We reverse the judgment of the trial court.
 {¶ 2} On November 25, 2003, the Ashtabula County Grand Jury issued an indictment, charging Pape with one count of Illegal Manufacture of Drugs (Methamphetamine), a felony of the second degree, in violation of R.C.2925.04(A); one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, a felony of the third degree, in violation of R.C. 2925.041(A); one count of Possession of Criminal Tools, a felony of the fifth degree, in violation of R.C. 2923.24(A); and one count of Possession of Drugs, a felony of the fifth degree, in violation of R.C.2925.11(A) and (C)(1)(a). On December 8, 2003, at his arraignment, Pape waived reading of the indictment and pled not guilty to the charges.
 {¶ 3} The charges against Pape arose from an incident which occurred on the evening of August 22, 2003. Upon reporting for duty at approximately 11 p.m. that evening, Deputy James Baehr of the Ashtabula County Sheriff's Department was informed by his supervisor, Sgt. Leonhard, that Officer Stephanie Hopkins of the Cleveland Heights Police Department had called the Sheriff's office with information that there was an active methamphetamine laboratory operating at 2040 East 39th Street in Ashtabula Township, Ohio. Officer Hopkins stated that she had received this information from her cousin, Veronica M. Wagner.
 {¶ 4} Acting upon this information, Deputy Baehr drove out to investigate the call, parking his patrol vehicle approximately three houses away from 2040 East 39th Street, and approached on foot. Upon arrival, Deputy Baehr approached the home from the east, walked across the front lawn of the residence toward the west side of the house, where he observed a basement window located a few feet from the corner of the house, containing a small window fan, which was running. Deputy Baehr noticed a smell coming from the fan in the window, which he believed was consistent with the production of methamphetamine. The window was partially obscured by a sheet, but there was light emitting from an eight to ten inch gap in the sheet where the fan was located, which allowed Deputy Baehr to bend down slightly and look into the basement window through the fan. When he peered through the opening in the window, Deputy Baehr stated that he saw a hand, with a blue glove holding a beaker or a glass jar and mixing a red substance. Deputy Baehr testified that, based upon his experience in law enforcement, he believed the substance was red phosphorous, a substance used in the manufacture of methamphetamines. Deputy Baehr noticed another basement window on the west side of the property and went to inspect it, but found that it was covered in black plastic, which prevented him from viewing additional activity in the basement.
 {¶ 5} Acting on this observation, Deputy Baehr radioed other patrol units, which subsequently arrived at the scene. Two deputies, who had arrived first, walked to the house to observe, and then returned. Shortly thereafter, two other deputies arrived, as well as Lt. Joseph Bernardo, who was the staff officer on duty that evening. After Deputy Baehr conferred with other officers about what he had seen, Lt. Bernardo determined that they would approach the house, despite the fact that they did not have a search warrant, due to the "possible danger" of explosion associated with the manufacture of methamphetamines. Deputy Baehr, Lt. Bernardo, and another deputy went to the side door and knocked, while two other deputies stood near the back door of the house. The door was answered by an unidentified male, later identified as co-defendant Donald Zuchowski. After Zuchowski opened the door and observed the officers standing there, he attempted to close the door, but a scuffle ensued, and Lt. Bernardo and the other deputy pulled Zuchowski from the doorway, allowing Deputy Baehr to enter the house.
 {¶ 6} Deputy Baehr then headed toward the entrance to the basement, when he suddenly saw two males, including Pape, running around the corner from the basement toward the steps. Deputy Baehr, who had his weapon drawn, ordered Pape and the other man, co-defendant Brian Potter, to lay down on the floor, where they were handcuffed and placed under arrest. Deputy Baehr stated that he detected a "strong odor" of chemicals on Pape's and Potter's clothing.
 {¶ 7} Other officers subsequently checked the upper story of the house and found a female. All of the individuals were then taken outside to the driveway, where they were read their rights and, according to Deputy Baehr, "were patted down, and at that time, a small packet of methamphetamines was found on Mr. Pape." According to Deputy Baehr, it was the established policy of the Ashtabula County Sheriff's Department to "pat down [arrestees] for our safety and theirs, [and] check for contraband before they're placed in the cruiser."
 {¶ 8} The house was secured, and other officers were summoned to assist in transporting the arrestees. In addition, the fire department and the DEA were called. Some time between 2 and 3 a.m., Deputy Baehr left the scene to obtain a search warrant for the premises, which was subsequently granted. The warrant identified the place subject to the search as "the residence, including curtilage and all vehicles located within the curtilage of the home * * * located at 2040 E. 39th St., Ashtabula Township, Ashtabula County, State of Ohio * * *."
 {¶ 9} The subsequent search of Pape's vehicle, a Chevrolet pickup truck, which was parked on the premises, revealed a cardboard box, approximately two feet square and two feet deep, which was found in the bed of the truck, containing approximately five pounds of matchbooks, which had the match heads removed, and four bottles of ephedrine, which were located in a cargo box affixed to the bed of the truck, and a stun gun, which was found in the cab of Pape's truck.
 {¶ 10} On March 31, 2004, Pape filed a motion to suppress evidence. A suppression hearing followed on May 7, 2004. On June 17, 2004, the trial court issued a judgment entry granting Pape's motion to suppress in part. Specifically, the court suppressed a packet containing .53 grams of methamphetamine, which was found in Pape's pocket, and the evidence seized from Pape's truck. However, the trial court did not suppress the testimony of police officers regarding any observations they made of Pape's presence on the premises prior to his arrest.
 {¶ 11} On June 23, 2004, the State appealed, pursuant to Crim.R. 12(K) assigning the following as error:
 {¶ 12} "The trial court erred in partially sustaining appellee's motion to suppress evidence."
 {¶ 13} The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses.State v. Hill, 75 Ohio St.3d 195, 208, 1996-Ohio-222. Since the trial court is in the best position to resolve the factual issues, State v.Searls (1997), 118 Ohio App.3d 739, 741, citing State v. Mills
(1992), 62 Ohio St.3d 357, 366, an appellate court is bound to accept the trial court's factual determinations as long as they are supported by competent and credible evidence. Id. at 741. Once the appellate court accepts the trial court's factual determinations, the appellate court must "independently determine as a matter of law whether the acceptable legal standard has been satisfied." See State v. Burrows, 11th Dist. No. 2000-T-0089, 2002-Ohio-1961, at ¶ 25, citing State v. Retherford
(1994), 93 Ohio App.3d 586, 592.
 {¶ 14} The Fourth Amendment of the United States Constitution states:
 {¶ 15} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, support by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 16} "It is a `basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York (1980), 445 U.S. 573, 586 (citation omitted). The United States Supreme Court has made clear that "[i]n terms that apply equally to seizures of property and seizures of persons, theFourth Amendment has drawn a firm line at the entrance to the house." Id. at 590. "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id.; see, also, State v.Howard (1991), 75 Ohio App. 3d 760, 768; State v. Martin, 11th Dist. No. 2002-P-0072, 2004-Ohio-3027, at ¶ 17.
 {¶ 17} The trial court, in granting Pape's motion to suppress the packet of methamphetamine found on his person, and the evidence found pursuant to a warrant to search his truck, which was granted after Pape's arrest, concluded that: (1) the "police did not have a sufficient basis to enter the home at 2040 East 39th Street without a warrant * * *, [t]herefore the arrest and detention of the defendant was not supported by an appropriate constitutional justification[;]" and, (2) the evidence did not establish that the defendant resided at 2040 East 39th Street, or that he "had the kind of connection with the household that would confer on him a legitimate expectation of privacy to the extent that police officers would be precluded from testifying as to their observations of his presence on the premises, prior to his arrest * * *." The court thus concluded the fact that the officers' observations of Pape may have constituted a search was not relevant.
 {¶ 18} The State does not deny that Ashtabula County Sheriff's deputies entered the premises located at 2040 E. 39th Street and arrested Pape and the other occupants of the house without benefit of a search warrant. Thus, the burden is clearly on the State to show that exigent circumstances existed which justified the warrantless entry of the premises. The State argues that the volatile nature and risk of explosion associated with the operation of an active methamphetamine laboratory was sufficient justification for sheriff's deputies to enter the premises under the exigent circumstances exception to the warrant requirement. We agree.
 {¶ 19} The exigent circumstances doctrine requires that, in the absence of a search warrant, probable cause plus exigent circumstances are required to effectuate a warrantless entry of a home. Kirk v.Louisiana (2002), 536 U.S. 635, 637. Thus, even if the State establishes that probable cause to search the premises existed, this alone is insufficient, absent exigent circumstances, to overcome the strong presumption that a warrantless search or seizure is unconstitutional under the Fourth Amendment. Coolidge v. New Hampshire (1971), 403 U.S. 443. 468 ("[N]o amount of probable cause can justify a warrantless search or seizure absent `exigent circumstances.'")
 {¶ 20} We find that police not only had probable cause to search the residence at 2040 E. 39th Street, but their observations upon entry gave them probable cause to arrest Pape. Based upon the phone call from Officer Hopkins, relaying the information she received from Wagner, the police had, at minimum, reasonable suspicion that a methamphetamine laboratory was operating at the premises, premised upon the "totality of the circumstances" test outlined in Illinois v. Gates (1983), 462 U.S. 213,238. First, the Ashtabula County Sheriff's deputies had a tip from an identified informant, i.e. Officer Hopkins, who received her information from an identified citizen informant, Wagner. The Ohio Supreme Court has made it clear that an identified, and unquestionably honest citizen informant who comes forward with a report of criminal activity, "which if fabricated would subject him to criminal liability," is considered presumptively reliable and thus a strong showing of other indicia of reliability is, therefore, unnecessary. Maumee v. Weisner,87 Ohio St.3d 295, 300, 1999-Ohio-68, quoting Gates, 462 U.S. at 233-234; see also, State v. Cerutti, 11th Dist. No. 2002-L-140, 2004-Ohio-3335, at ¶ 21 ("[c]ourts have routinely recognized that the identified citizen informant possesses the greatest reliability"). The fact that the tip was relayed through a police officer, buttresses its reliability and veracity, even though there is no evidence of the basis of the informant's knowledge from the call alone. See Barnesville v. Wayable,
7th Dist. No. 98-BA-36, 2000 Ohio App. LEXIS 1469, at *14.
 {¶ 21} Based upon this tip, Deputy Baehr went to 2040 East 39th Street to investigate. It is well-settled that "[p]olice are privileged to go upon private property when in the proper exercise of their duties." Statev. Israel, 1st Dist. No. C-961006, 1997 Ohio App. LEXIS 4413, at *11.
 {¶ 22} Since "Fourth Amendment Rights are personal in nature and may not be vicariously asserted by others," thus, "a defendant bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the area searched." State v.Dennis, 79 Ohio St.3d 421, 426, 1997-Ohio-372 (citations omitted). Here, it is undisputed that Pape was not a resident of the premises, nor was he an overnight guest. Therefore, the observations of Deputy Baehr through the basement window, even if they can be construed as a search, do not violate Pape's Fourth Amendment rights. Thus, we find that the informant's tip, in conjunction with Deputy Baehr's observation of the red phosphorous, and the chemical smell, coupled with Deputy Baehr's extensive firsthand knowledge of methamphetamine production, were sufficient to establish probable cause to search the premises.
 {¶ 23} We next must consider whether there were exigent circumstances present, sufficient to justify a warrantless entry on the premises. "There is `no absolute test for the presence of exigent circumstances,'" therefore, courts are required to examine the unique facts of each controversy, United States v. Wicks (C.A.10, 1993), 994 F.2d 964, 970 (citations omitted). With respect to clandestine methamphetamine laboratories, other courts have determined that the "basic aspects of the `exigent circumstances' exception are that (1) law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched." UnitedStates. v. Rhiger (C.A.10, 2003), 315 F.3d 1283, 1288; Wicks,994 F.2d at 970 (ciatation omitted); Foutz v. West Valley City (C.D.Utah 2004), 345 F.Supp. 1272, 1275; Lopkoff v. Slater (D. Colo. 1994),898 F.Supp. 767, 775.
 {¶ 24} Applying the foregoing test, the courts have upheld limited warrantless searches when the odor of chemicals associated with methamphetamine production was detected coming from a residence, the observing officer had extensive knowledge of the particular dangers associated with an active methamphetamine lab, and there was no evidence offered that agents entered the home with an intent to arrest and seize evidence. Rhiger, 315 F.3d at 1290-1291; see also, United States v. Erb
(C.A.10, 1979) 596 F.2d 412, 418 (exigent circumstances search upheld where the odor of methamphetamine production was evident, the agent had extensive experience in the matter of clandestine laboratory operations and knowledge of their inherent dangers); United States v. Wilson
(C.A.9, 1989), 865 F.2d 215, 217; United States v. Spinelli (C.A.2, 1988), 848 F.2d 26, 30 (exigent circumstances included the volatile nature of chemicals used to manufacture methamphetamine, and the likelihood of explosion). But see, United States v. Jackson (D.Kan. 2002), 199 F.Supp.2d 1081, 1090 (odor of anhydrous ammonia and suspicion of laboratory do not constitute exigent circumstances without evidence of volatile nature of chemicals and the danger of explosion);People v. Gott (Ill.App. 2004), 803 N.E.2d 900, 907-908 (odor of chemicals and suspicion of methamphetamine lab not enough for public safety exigent circumstance without separate evidence that police were also aware of the dangerous nature of chemicals).
 {¶ 25} In the case sub judice, Deputy Baehr testified that, upon arrival, he first walked past the property from the east and noticed that the basement lights were on, and then continued walking "past the house a little bit" and walked up the west side of the house, when he noticed the basement window with a fan on the west side of the house, only "a couple few feet from the corner of the front of the house." From the window, Baehr noticed a chemical smell coming from the fan, and observed the gloved hand mixing the red substance, which based upon Deputy Baehr's training and experience, he knew was red phosphorous, a substance widely used in methamphetamine production. Well aware of the highly flammable and explosive nature of methamphetamine laboratories, and fearing the potential of fire or explosion in a residential area, Deputy Baehr called for backup.
 {¶ 26} Deputy Baehr testified that officers finally decided to approach the residence and knock on the door, since "with the alleged manufacturing of methamphetamines, [there is a] danger of it * * * exploding." Deputy Baehr also testified that once the door was opened by Zuchowski, a very strong odor of methamphetamine production was detected again. Under these circumstances, we conclude that the law enforcement officers had reasonable grounds to believe that there was an immediate need to protect their lives and property or that of others; there was no evidence of entry with the purpose of arrest; and there was a reasonable basis, approaching probable cause, to associate an emergency with the area or the place to be searched.
 {¶ 27} From the evidence adduced at trial, we further conclude that no search violative of Pape's Fourth Amendment rights was conducted after the warrant was issued. Based upon the cumulative factors of the reliable tip from the identified informant, the odor of methamphetamine production coming from the basement, and Deputy Baehr's observation of the red phosphorous, there was probable cause to search the premises. Exigent circumstances existed in the danger to the occupants of the home, the officers, and the surrounding neighborhood. Thus, any additional observations related to Pape's behavior subsequent to the entry could be used to establish probable cause to arrest him.
 {¶ 28} It is important here to distinguish the "search" of the home and the vehicles from the search of Pape's person and his vehicle incident to Pape's valid arrest. Deputy Baehr had probable cause to arrest Pape based upon the aforementioned factors, as well as the strong odor of methamphetamine on Pape's clothing and his attempt to flee when Deputy Baehr was attempting to secure the building and clear it of its occupants. Based upon the valid arrest, a limited contemporaneous search of the arrestee's person or the area under his immediate control is justified to ensure officer safety and prevent the destruction of evidence. Chimel v. California (1969), 395 U.S. 752, 764. Thus, the search of Pape's person revealing the packet of methamphetamine did not violate his Fourth Amendment rights.
 {¶ 29} Furthermore, it has been held that police may search vehicles pursuant to a valid warrant to search a home, if the vehicle is located in the curtilage of the home. State v. Tewell (1983), 9 Ohio App.3d 330,331; State v. Simpson, 2nd Dist. No. 19011, 2002-Ohio-1300, 2002 Ohio App. LEXIS 1310, at *6. Since no search of Pape's vehicle was conducted until after a valid warrant had been secured based upon probable cause, it was also permissible under the Fourth Amendment, and the evidence should not have been suppressed.
 {¶ 30} We find the State's sole assignment of error has merit and reverse the judgment of the Ashtabula County Court of Common Pleas and remand this action for further proceedings consistent with this decision.
Rice, J., O'Toole, J., concur.