DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} The State of Ohio has appealed the judgment of the Summit County Court of Common Pleas which granted the respective motions to suppress evidence of Defendants-Appellees Stuart Sanor[1], Nicholas Hunter, and Joy Cooper. This Court affirms.
 I *Page 2 {¶ 2} On April 20, 2006, Defendants-Appellees Stuart Sanor, Nicholas Hunter and Joy Cooper were indicted on one count each of: illegal manufacture of drugs, in violation of R.C.2925.04(A), a felony of the first degree; aggravated possession of drugs, in violation of R.C. 2925.11, a felony of the second degree; illegal assembly or possession of chemicals to manufacture drugs, in violation of R.C.2925.041, a felony of the second degree; possession of marijuana, in violation of R.C. 2925.11(A), a minor misdemeanor; illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree; and aggravated possession of drugs, in violation of R.C. 2925.11, a felony of the fifth degree. Appellees were also indicted on two counts of endangering children, in violation of R.C. 2919.22(B)(6), felonies of the third degree. Appellee Sanor was also indicted on one count of aggravated trafficking in drugs, in violation of R.C.2925.03(A)(2), a felony of the third degree.
 {¶ 3} Appellees each filed motions to suppress evidence. On July 25, 2006, the trial court conducted a suppression hearing. On August 3, 2006, the trial court granted Appellees' motions to suppress evidence. The State has timely appealed asserting one assignment of error.
 II Assignment of Error *Page 3 "THE TRIAL COURT ERRED IN GRANTING THE MOTIONS TO SUPPRESS."
 {¶ 4} In its sole assignment of error, the State has argued that the trial court erred in granting Appellees' motions to suppress. Specifically, the State has argued that probable cause and exigent circumstances existed sufficient to justify a warrantless search of the Gage Street residence (the "residence"). This Court disagrees.
 {¶ 5} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact.State v. Hopfer (1996), 112 Ohio App.3d 521, 548, quoting State v.Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998),127 Ohio App.3d 414, 416.
 {¶ 6} The Fourth Amendment of the United States Constitution states:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, *Page 4 
supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Regarding unreasonable searches and seizures, this Court has held that "[a]bsent exigent circumstances, a warrantless search or seizure effected in a home is per se unreasonable." State v. Carrigan, 9th Dist. No. 21612, 2004-Ohio-827, at ¶ 10, citing Payton v. New York (1980),445 U.S. 573, 590.
 {¶ 7} The exigent circumstances doctrine states that both probable cause and exigent circumstances are required to effectuate a warrantless entry of a home. State v. Marlow (Feb. 28, 1996), 9th Dist. No. 17400, at *2, citing Payton, 445 U.S. at 588-589. Thus, even if the State established that probable cause to search the premises existed, "no amount of probable cause can justify a warrantless search or seizure absent `exigent circumstances.'" Coolidge v. New Hampshire (1971),403 U.S. 443, 468. Accordingly, this Court will independently review whether both exigent circumstances and probable cause existed in the matter sub judice.
Exigent Circumstances
 {¶ 8} On appeal, the State has primarily argued that the officers had probable cause to believe a methamphetamine lab was operating on the premises and thus, exigent circumstances existed due to the danger of explosion to the police and surrounding community. The State has also put forth a secondary, more cursory argument that exigent circumstances may exist where children may be present in a house where some evidence of drug usage exists. The State did not *Page 5 
argue the potential destruction of evidence as an exigency. Regarding exigent circumstances, this Court has stated:
 "Exigent circumstances take many forms. Although there is no precise list of all the exigent circumstances that might justify a warrantless search, exigent circumstances generally must include the necessity for immediate action that will protect or preserve life or avoid serious injury[.]" (Internal quotations and citations omitted). State v. Rinard, 9th Dist. No. 06CA0017, 2006-Ohio-5633, at ¶ 7. See also State v. Price (1999), 134 Ohio App.3d 464, 467, quoting Mincey v. Arizona (1978), 437 U.S. 385, 392.
 {¶ 9} Specifically, with respect to clandestine methamphetamine laboratories, the Eleventh Appellate District has held that a methamphetamine lab creates inherent exigent circumstances in the "danger to the occupants of the home, the officers, and the surrounding neighborhood." State v. Pape, 11th Dist. No. 2004-A-0044,2005-Ohio-4657, at ¶ 27. In Pape, the Eleventh District noted:
 "[O]ther courts have determined that the `basic aspects of the `exigent circumstances' exception are that (1) law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.' United States. v. Rhiger (C.A.10 2003), 315 F.3d 1283, 1288; Wicks, 994 F.2d at 970 (citation omitted); Foutz v. West Valley City (C.D.Utah 2004), 345 F.Supp. 1272, 1275; Lopkoff v. Slater
(D.Colo.1994), 898 F.Supp. 767, 775.
 "Applying the foregoing test, the courts have upheld limited warrantless searches when the odor of chemicals associated with methamphetamine production was detected coming from a residence, the observing officer had extensive knowledge of the particular dangers associated with an active methamphetamine lab, and there was no evidence offered that agents entered the home with an intent to arrest and seize evidence. Rhiger, 315 F.3d at 1290- *Page 6 
1291; see also, United States v. Erb (C.A.10, 1979) 596 F.2d 412, 418 (exigent circumstances search upheld where the odor of methamphetamine production was evident, the agent had extensive experience in the matter of clandestine laboratory operations and knowledge of their inherent dangers); United States v. Wilson
(C.A.9, 1989), 865 F.2d 215, 217; United States v. Spinelli (C.A.2, 1988), 848 F.2d 26, 30
(exigent circumstances included the volatile nature of chemicals used to manufacture methamphetamine, and the likelihood of explosion)." Pape at ¶ 23-24.
 {¶ 10} This Court agrees with the Eleventh District that the danger to occupants, officers and community associated with the suspected production of methamphetamine constitutes per se exigent circumstances. Therefore, if officers have probable cause to believe a premises is being used to manufacture methamphetamine, the officers may conduct a warrantless search in the interest of safety. Recently, the legislature has recognized the public safety threat created by methamphetamine labs by enacting R.C. 2933.33(A) which provides:
 "If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture."
 {¶ 11} This Court finds that R.C. 2933.33(A), while not applicable in the present case,[2] is exceptionally persuasive authority. It is clear that the legislature *Page 7 
has deemed the very real threat of explosion and fire due to the volatility of the materials used to produce methamphetamines a sufficient enough threat to justify warrantless searches. In short, R.C.2933.33(A) validates the principle espoused in Pope, and this Court sees no reason why it should not be adopted in the present case. Accordingly, this Court concludes that if police officers in the present case had probable cause to believe a methamphetamine lab was operating on the premises, then exigent circumstances existed to justify a warrantless search of the residence.
 {¶ 12} Moreover, this Court has held that exigent circumstances may exist where a police officer has probable cause to believe that a child is present in a home where there is evidence of illicit drug activity.State v. Culgan (2001), 147 Ohio App.3d 19, 26. Having established that the situations discussed above constitute exigent circumstances, this Court must proceed to review whether probable cause existed.
Probable Cause {¶ 13} "[P]robable cause is the existence of circumstances that warrant suspicion." (Quotations and citations omitted). State v.Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 8. Therefore, "the standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires only a showing that a probability of criminal activity exists." (Quotations omitted). Id. See also, State v. George (1989), 45 Ohio St.3d 325, 329 (stating it is "clear *Page 8 
that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause"). Probable cause determinations consider the totality of the circumstances. Illinois v.Gates (1983), 462 U.S. 213, 233.
 {¶ 14} Based on the record before it, this Court concludes that the police officers on scene did not have probable cause to believe that a methamphetamine lab was being operated from the residence.
 {¶ 15} The testimony adduced at the suppression hearing established the following. On April 10, 2006, the Summit County Drug Unit received an anonymous tip that two named young girls were playing with Coleman camping fuel and tubing. The anonymous caller related to the police that the girls stated they found the items in a secret compartment above the kitchen. The anonymous caller specifically identified Appellees Joy Cooper and Stuart Sanor as residents of the house.
 {¶ 16} Upon arriving at the residence, officers went to the front and back doors. At the back door, officers spoke with Defendant Emily Pochedly. Officers also spoke with Appellee Sanor at the front door. The officers received conflicting information from each regarding how long the parties had lived at the residence. Pochedly admitted to the presence of a small amount of marijuana in the residence and also admitted to being addicted to methamphetamine. Pochedly told officers that she had used methamphetamines at the house at approximately noon that day. *Page 9 
Officers also spotted a can of acetone in a van parked in the driveway. The van was registered to Appellee Cooper.
 {¶ 17} After reviewing the record, this Court concludes that at best, officers on scene had the following information available to them prior to committing the warrantless search: an anonymous phone call stating the two children were playing with Coleman fuel and rubber tubing outside the residence and a statement by the children to the anonymous tipster that the materials came from the residence; a can of acetone located in a van registered to a resident; the smell of burnt marijuana; inconsistent answers from residents interviewed at the front and back doors; false statements by Emily Pochedly regarding drug use at the home; Emily Pochedly's admission to smoking methamphetamine at the house approximately two hours prior.
 {¶ 18} Appellees have argued that an anonymous phone tip is inherently unreliable and cannot by itself serve as probable cause. While an identified tipster provides greater indicia of reliability than an anonymous one, an anonymous tip may be sufficient when it is accompanied by other factors, events or circumstances which substantiate the anonymous tip. See State v. Catanzarite, 9th Dist. No. 22212,2005-Ohio-260, at ¶ 13; State v. Juengerman (Apr. 24, 1991), 9th Dist. No. 1964, at *2, citing State v. Belton (Apr. 15, 1987), 9th Dist. No. 12882. While police officers had a report that children were playing with items used to *Page 10 
manufacture methamphetamine obtained from a specific residence, there is little to no evidence in the record of any factors to substantiate the anonymous tip.
 {¶ 19} Cross examination of the witnesses revealed that the tubing and the Coleman fuel were never recovered and that the children who were reportedly playing with the items were not present. With regard to the Coleman camping fuel and rubber tubing, the anonymous informant told the police that the informant had confiscated the materials. With regard to the children, officers were told that the children were at school and the record demonstrates that officers had no other indication that children were present. For instance, officers did not hear any children through the open windows and did not see any toys outside.
 {¶ 20} Therefore, necessarily disregarding the information garnered from the anonymous phone call, this Court is essentially left with four relevant pieces of evidence: the smell of burnt marijuana; the inconsistent and untrue statements of Appellee Sanor and Emily Pochedly; Emily Pochedly's admission to smoking methamphetamine at the house that morning; and a can of acetone. The smell of burnt marijuana is irrelevant. The inconsistent and false statements may indicate an attempt to conceal illegal activity, but do not bear directly on the issue of the existence of a methamphetamine lab. Similarly, Emily Pochedly's admitted drug use indicates that that she is a methamphetamine user, not that a methamphetamine lab is being operated from her residence. Finally, acetone is a legal substance with many harmless and practical uses. This Court finds, that even *Page 11 
taken in the aggregate, these factors are insufficient to establish probable cause that a methamphetamine lab was being operated at the residence.
 {¶ 21} With regard to the State's argument concerning the welfare and safety of present children, as stated above, the record indicates that the police had absolutely no reason to believe children were present in the house. There was no indication in the anonymous tip when exactly the children were playing with the fuel and tubing, and Emily Pochedly told the police that the children were at school. Further, officers did not observe any indications of children being present, namely children's voices or laughter or toys lying about.
 {¶ 22} Considering the unreliability of the anonymous tip and based on the limited information available to them, it was unreasonable for the officers to suspect that a methamphetamine lab was being operated from the residence. While it could easily be construed that illicit drug activity was occurring at the residence, it is not a logical inference to presume that the residents were manufacturing methamphetamine. Nor did the officers have any probable cause to believe children were present and being exposed to drug activity. Therefore, this Court can only conclude that probable cause did not exist, and that despite potential exigent circumstances, the police had no justification for conducting a warrantless search. See Coolidge, 403 U.S. at 468.
 {¶ 23} The State's assignment of error lacks merit.
 III *Page 12 {¶ 24} The State's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
[1] The trial court mistakenly identified Defendant-Appellee Stuart Sanor as Stuart Sandor in its judgment entry granting Appellees' motions to suppress. Accordingly, the case caption in the appeal before this Court is also incorrect.
[2] R.C. 2933.33 was enacted on May 17, 2006. Appellees were indicted on April 20, 2006.
 DICKINSON, J. CONCURS *Page 13