[Cite as *State v. Armbruster*, 2013-Ohio-3119.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26645 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL J. ARMBRUSTER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 11 12 3293 (A) |

DECISION AND JOURNAL ENTRY

Dated: July 17, 2013

WHITMORE, Judge.

{¶1} Defendant-Appellant, Michael Armbruster, appeals from the judgment of the Summit County Court of Common Pleas, denying his motion to suppress. This Court affirms.

I

{¶2} On November 21, 2011, the City of Norton Police Department received a tip that the occupants of Room 315 in the Berlin Motel were actively cooking methamphetamine. Officer John Canterbury responded to the motel and, when he approached Room 315, smelled a strong chemical odor that he associated with methamphetamine. After unsuccessfully attempting to get the occupants of the room to open the door, Officer Canterbury kicked in the door. Once inside, he observed a working methamphetamine lab in plain view. He then arrested the room's two occupants, Armbruster and another individual, and evacuated the motel's tenants for safety reasons.

**{¶3}** A grand jury indicted Armbruster on each of the following counts: (1) illegal manufacturing of methamphetamine; (2) illegal assembly or possession of chemicals for the manufacture of drugs; and (3) aggravated trafficking in drugs. Each count also contained an attendant forfeiture specification. Armbruster initially pleaded not guilty to the charges and filed a motion to suppress. The trial court held a hearing on the motion and later denied it. After the court denied Armbruster's motion, he withdrew his not guilty plea and pleaded no contest to the charge of illegal manufacturing and the forfeiture specification linked to that charge. The State dismissed the remaining two charges in exchange for Armbruster's plea. The court then sentenced Armbruster to four years in prison.

**{¶4}** Armbruster now appeals and raises one assignment of error for our review.

II

Assignment of Error

THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS THE SEIZED EVIDENCE.

**{¶5}** In his sole assignment of error, Armbruster argues that the trial court erred by denying his motion to suppress. We disagree.

**{¶6}** The Ohio Supreme Court has held that:

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied). Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. Lorain No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

{¶7} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "[A] hotel room is a location in which a citizen has a valid expectation of privacy, ordinarily requiring a warrant to justify a police search." *State v. Reynolds*, 9th Dist. Summit No. 22017, 2004-Ohio-6272, ¶ 11. "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a search based upon probable cause and the existence of exigent circumstances. *See State v. Price*, 134 Ohio App.3d 464, 467 (9th Dist.1999), quoting *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51 (1985). A "narrower subset" of the exigent circumstances exception is the emergency aid exception. *See State v. Gooden*, 9th Dist. Summit No. 23764, 2008-Ohio-178, ¶ 6. The emergency aid exception "allows the police 'to enter a dwelling without a warrant and *without probable cause* when they reasonably believe, based on specific and articulable facts, that a person within the dwelling is in need of immediate aid.'" (Emphasis added.) *State v. Baker*, 9th Dist. Summit No. 23713, 2009-Ohio-2340, ¶ 6, quoting *Gooden* at ¶ 6.

{¶8} "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City, Utah v.*

*Stuart*, 547 U.S. 398, 403 (2006), quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). *Accord State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, syllabus.

> If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture.

R.C. 2933.33(A). "This Court has held that clandestine methamphetamine laboratories pose a per se danger to occupants, officers, and the community, and law enforcement officers need only a reasonable belief that a structure contains a methamphetamine laboratory to justify a search under the emergency-aid exception set forth in R.C. 2933.33(A)." *State v. Timofeev*, 9th Dist. Summit No. 24222, 2009-Ohio-3007, ¶ 26. Probable cause, therefore, is not required for a warrantless entry if officers have a reasonable belief that methamphetamine laboratory is being operated at a particular location. *State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, ¶ 20 (9th Dist.). "The existence of an active methamphetamine laboratory is, as a matter of law, an emergency which threatens life and limb that supports an objectively reasonable belief that immediate action is necessary to protect life or property." *Timofeev* at ¶ 26.

{¶9} Officer Canterbury testified that, on the afternoon of November 21, 2011, his chief asked him to investigate a tip the department had received. Specifically, the department had received a tip that the occupants of Room 315 at the Berlin Motel were actively cooking methamphetamine. Officer Canterbury described the Berlin Motel as a motel whose rooms are all single-story, ground level rooms that are for rent on either a short-term or long-term basis. He testified that the police department frequently received complaints about drug activity

occurring at the motel and that he was aware that other officers had responded to the motel in the past to investigate the possible production of methamphetamine.

{¶10} As Officer Canterbury approached Room 315, he testified that he smelled a strong chemical odor, consistent with the odor that emanates from an active methamphetamine lab. Officer Canterbury explained that during his 23 years of experience on the force he had received training in methamphetamine labs and had personally responded to approximately 50 calls for methamphetamine manufacturing or assembly. Officer Canterbury gave a detailed description of the smell associated with methamphetamine production and testified that the odor he smelled outside of Room 315 "was indicative of a working meth lab."

{¶11} After he smelled the strong chemical odor coming from Room 315, Officer Canterbury went to the motel office and procured a key for the room. He testified that he then attempted to peaceably gain entry to the room without the key by asking its occupants for a cigarette. When it became clear that the occupants would not open the door, Officer Canterbury identified himself as a police officer and ordered the room's occupants to let him in. Still, the occupants refused to open the door. At that point, Officer Canterbury testified that he tried to use the room key to open the door. Each time he unlocked the door, however, someone inside the room would relock it from the inside. Officer Canterbury ultimately decided to gain entry to the room by kicking in the door.

{¶12} The defense presented one witness at the suppression hearing. Minesh Patel testified that he was the son of the owner of the Berlin Motel and that the motel had rented a room to Armbruster for approximately two weeks before the day the police arrived. Patel testified that he never noticed any suspicious smells when he walked by Room 315. He

admitted, however, that he did not have any training in methamphetamine recognition.  He also admitted that, during Armbruster's stay, he never went into Armbruster's room.

{¶13}  Armbruster argues that Officer Canterbury lacked probable cause to enter Room 315 because there was no evidence of an ongoing exigency.  Armbruster argues that the State failed to present any evidence as to the identity of the alleged caller who provided the department with information about his room.  Further, he argues that, in the two weeks he stayed at the Berlin Motel, no one had noticed or complained about any chemical smell coming from his room.

{¶14}  "Anonymous tips, when corroborated by other factors, events or circumstances, may provide the requisite reasonable grounds to justify [a] warrantless entry."  *Baker*, 2009-Ohio-2340, at ¶ 7.  Although Officer Canterbury did not know the identity of the caller who provided the department with a tip about Room 315, he testified that the caller gave the police information there was an actively cooking lab in that room and, when he arrived outside the room, he smelled the strong chemical odor he associated with an actively cooking lab.  At that point, therefore, the anonymous tip was corroborated by Officer Canterbury's own investigation.

{¶15}  Officer Canterbury was not required to have probable cause in order to justify a warrantless entry into Room 315.  Instead, his entry was justified so long as he had "a reasonable belief that [the room] contain[ed] a methamphetamine laboratory * * *."  *Timofeev*, 2009-Ohio-3007, at ¶ 26.  *Accord White*, 175 Ohio App.3d 302, 2008-Ohio-657, at ¶ 20.  Officer Canterbury testified that he received training in methamphetamine labs and had personally responded to approximately 50 methamphetamine-related calls.  He further testified that when he approached Room 315, he smelled the strong chemical odor "indicative of a working meth lab."  Moreover, Officer Canterbury testified that he responded to the motel room (1) based on a tip that its

occupants were actively cooking methamphetamine, and (2) knowing that his department had responded to the motel in the past due to complaints about drug activity. Officer Canterbury's testimony supports the conclusion that he had a reasonable belief Room 315 contained a methamphetamine lab prior to entering it.

**{¶16}** Although Patel testified that he never noticed a suspicious smell when he was around Room 315, he admitted that he was not trained to recognize the smell of methamphetamine. He also admitted that he never went inside Armbruster's room during his two week stay. To the extent that Patel's testimony conflicted with Officer Canterbury's, the trial court was in the best position to resolve the conflict. *See State v. Pamer*, 70 Ohio App.3d 540, 543 (9th Dist.1990) ("When there is a conflict in the testimony of witnesses, * * * it is for the trier of fact to determine the weight and credibility to be given such evidence."). The trial court specifically found in its suppression ruling that Officer Canterbury's testimony was credible.

**{¶17}** The record contains competent, credible evidence in support of the trial court's decision that an ongoing emergency justified Officer Canterbury's warrantless entry into Armbruster's motel room. As previously noted, "[t]he existence of an active methamphetamine laboratory is, as a matter of law, an emergency which threatens life and limb that supports an objectively reasonable belief that immediate action is necessary to protect life or property." *Timofeev* at ¶ 26. Officer Canterbury's testimony supports the conclusion that an active methamphetamine lab existed in Room 315. Accordingly, the trial court properly denied Armbruster's motion to suppress. Armbruster's sole assignment of error is overruled.

III

**{¶18}** Armbruster's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCURS.

BELFANCE, P. J.
CONCURRING IN JUDGMENT ONLY.

**{¶20}** I concur in the majority's judgment. The facts of this case establish that Officer Canterbury had probable cause to believe that there was a methamphetamine lab in Mr.

Armbruster's hotel room and exigent circumstances existed, thus warranting immediate action. Therefore, the warrantless entry in this case was permissible under the Fourth Amendment.

{¶21} As noted in the main opinion, a warrantless search is per se unreasonable under the Fourth Amendment subject to several exceptions. *California v. Acevedo*, 500 U.S. 565, 580 (1991). One such exception exists when there is probable cause coupled with the existence of exigent circumstances. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002). The determination of whether exigent circumstances exist requires examination of the factual circumstances of each particular case. *Missouri v. McNeely*, ___ U.S. ___, 133 S.Ct. 1552, 1559 (2013). Thus, I disagree with the view that "the suspected production of methamphetamine constitutes per se exigent circumstances." *State v. Sandor*, 9th Dist. Summit No. 23353, 2007-Ohio-1482, ¶ 10. Notably, the Sixth Circuit Court of Appeals has rejected the notion that the suspected production of methamphetamine constitutes a per se exigent circumstance. *See United States v. Atchley*, 474 F.3d 840, 851 (6th Cir.2007), fn. 6 ("We do not intend to say that there should be a per se rule that whenever evidence of a methamphetamine laboratory is apparent, there is always exigency. * * * [P]articularly important in this case is the fact that because the laboratory was in a motel, the possibility of explosion posed a great risk to the numerous other occupants in the building. Further, many hotels have a central ventilation system that would allow fumes to easily permeate the rest of the building. * * * [T]he defendant's * * * laboratory posed a greater threat to human lives than if the laboratory had been in a rural area.").

{¶22} *Sandor* correctly examined whether there was both probable cause and exigent circumstances thus supporting the warrantless search. In examining the contours of the exigent circumstances exception, the court referenced factors relied upon by numerous federal courts. *Sandor* at ¶ 8-12. It also relied upon *State v. Pape*, 11th Dist. Ashtabula No. 2004-A-0044,

2005-Ohio-4657. In *Pape*, the Eleventh District Court of Appeals considered whether exigent circumstances and probable cause existed to support a warrantless search. *Id*. at ¶ 18-19. Based upon the specific facts of the case, the *Pape* court concluded that exigent circumstances and probable cause were present. *Id.* at ¶ 22, 26. In relying on *Pape*, the *Sandor* court suggested that *Pape* stands for the proposition that the danger to occupants, officer and the community associated with the suspected production of methamphetamine constitute per se exigent circumstances. *Sandor* at ¶ 10. It then concluded that, if police officers had probable cause to believe that a methamphetamine lab was operating on the premises, then exigent circumstances existed to justify the search of the residence. *Id*. However, *Pape* did not ever hold that the suspected production of methamphetamine constitutes per se exigent circumstances. Rather, the analysis in *Pape* reflects the appellate court's consideration of the specific facts present in that case and their application to multiple factors indicating the presence of exigent circumstances. *Id*. at ¶ 23-27.

{¶23} Exigent circumstances exist when a reasonable person would believe that the delay to secure a warrant is unacceptable under the circumstances. *See United States v. Purcell*, 526 F.3d 953, 960 (6th Cir.2008). Inherent in that question is the necessity to look at the facts of a given case; what may be an exigency requiring immediate action under some circumstances may not be an exigency in others. *See McNeely*, 133 S.Ct. at 1559. The circumstances of this case would lead a reasonable person to believe that a delay to secure a warrant would be unacceptable given the very strong odor emanating into the hotel hallway from behind a closed hotel door, the risk of explosion, and the close-quarters of the hotel, thus posing a risk to others. Under other circumstances, even if there was probable cause to believe that a methamphetamine lab existed in a home, exigent circumstances might not be present thereby justifying a

warrantless entry. For example, if Officer Canterbury detected the smell of methamphetamine coming from a house at the center of a five-acre lot, exigency would not necessarily exist. *See Atchley*, 474 F.3d at 851, fn. 6. A per se exigency rule is incompatible with the principle that exceptions to the warrant requirement are limited and narrow and must be determined on a case-by-case basis through examination of the totality of the facts and circumstances. Even where probable cause exists, our Constitution demands the procurement of a warrant and that is the very essence of the Fourth Amendment. The creation of a per se rule of exigency without examining the particular facts of a case to determine whether the exigency in fact exists, simply allows warrantless entry upon probable cause. However, the point of the exigent circumstances exception to the warrant requirement is to examine whether an exigency is truly present notwithstanding the existence of probable cause.

{¶24} I also disagree with this Court's holding that "law enforcement officers need only a reasonable belief that a structure contains a methamphetamine laboratory to justify a search under the emergency-aid exception set forth in R.C. 2933.33(A)." *State v. Timofeev*, 9th Dist. Summit No. 24222, 2009-Ohio-3007, ¶ 26, citing *State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, ¶ 19-20 (9th Dist.). Notably, *Timofeev* relies on the lead opinion in *White*, treating it as a holding of a majority of the court when it was not. The lead opinion in *White* suggests that *Sandor* was an emergency-aid case despite *Sandor* not mentioning the emergency-aid doctrine at any point. Nevertheless, the lead opinion interprets *Sandor*'s references to the dangers posed by methamphetamine labs as implicit evidence of an emergency-aid analysis. *See White* at ¶ 19. However, I believe in this is an incorrect conclusion given the more limited application of the emergency aid doctrine as well as the *Sandor* court's express reference to precedent concerning

the exigent circumstances exception to the warrant requirement and not the emergency aid doctrine. *See Sandor* at ¶ 8-12.

**{¶25}** As noted in the main opinion, emergency aid is a narrower subset of the exigent circumstances exception to the warrant requirement and is based on the idea that an officer must immediately act to preserve life. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978) ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" (Internal quotations and citations omitted.)). While there is no doubt that methamphetamine labs pose serious risks, the mere suspected existence of a lab does not support the conclusion that officers must act immediately in order to assist a person who is seriously injured or imminently threatened with injury.[1] For example, if police, while looking through a window, saw a person actively cooking methamphetamine while a child was near the flame watching, such would satisfy the need for immediate action to protect the child. Many illegal activities are dangerous to those performing them, but those general and potential dangers do not satisfy the narrow factual contours of the emergency aid doctrine. In this particular case, there were no facts presented suggesting the need to rush to the aid of another in order to preserve life and limb.

**{¶26}** Finally, this Court's reliance on R.C. 2933.33(A) is also problematic. It is apparent that the statute reflects the General Assembly's concern with the dangers of methamphetamine labs. It may have also been enacted for the purpose of protecting those who

---

[1] Notably, in *Brigham City* a police officer witnessed a person getting beaten. *Id*. at 401. Under those circumstances, the United States Supreme court upheld the warrantless entry based upon the emergency aid doctrine. *Id*. at 400.

respond to methamphetamine labs from liability. While it is the province of the legislature to enact laws, it is the province of the judiciary to interpret and apply the law. Thus, the General Assembly cannot legislate what constitutes exigent circumstances with respect to methamphetamine labs, any more than it can direct a court of law as to what constitutes exigent circumstances in some other context. *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void. * * * It is emphatically the province and duty of the judicial department to say what the law is."). The determination of whether a warrantless entry passes constitutional muster is the province of the judiciary and the existence of probable cause and exigent circumstances are part and parcel of that inquiry.

{¶27} Given all of the above, I believe that the warrantless entry was permissible given the circumstances of this case; however, I respectfully disagree with the analysis contained in the main opinion.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.