[Cite as *State v. Secriskey*, 2017-Ohio-4169.]

STATE OF OHIO       )                IN THE COURT OF APPEALS
                           )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

STATE OF OHIO

      Appellee

      v.

JOSEPH SECRISKEY

      Appellant

C.A. Nos.     28093
                   28094

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   CR 2015-04-1163A
                CR 2015-10-3128

DECISION AND JOURNAL ENTRY

Dated: June 7, 2017

CARR, Presiding Judge.

{¶1} Defendant-Appellant, Joseph Secriskey, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On the morning of April 12, 2015, Secriskey sought treatment at a hospital for chemical burns to his face. The hospital reported his injuries to the police, and the police, suspecting that Secriskey might have been injured in a methamphetamine-related incident, drove to his apartment before responding to the hospital. Outside Secriskey's apartment, the police found three discarded bottles that they believed were consistent with methamphetamine production. They also noted that all the windows to Secriskey's apartment were open and that there was a chemical smell in the air. The police ultimately entered his apartment and found

numerous items used to make methamphetamine, along with an exploded bottle in the kitchen sink.

{¶3} On the morning of October 4, 2015, an officer discovered Secriskey slumped over the steering wheel of his vehicle, which was pulled to the side of the road. Secriskey appeared disoriented when the officer roused him and, upon questioning, admitted that he did not have a valid driver's license. The officer also observed that Secriskey had a knotted baggie in his lap that appeared to be coated in white powder. After removing Secriskey from his vehicle, the officer discovered various items of paraphernalia in the vehicle, including a hypodermic needle, a container of methamphetamine, and a separate case containing syringe components and Q-Tips.

{¶4} The April incident resulted in Criminal Case No. 2015-04-1163(A), in which Secriskey was charged with illegally manufacturing methamphetamine within the vicinity of a school. The October incident resulted in Criminal Case No. 2015-10-3128, in which he was charged with aggravated possession of methamphetamine, possessing drug abuse instruments, and driving under suspension. Secriskey filed a motion to suppress in the illegal manufacturing case, challenging the warrantless search of his apartment. The court held a hearing on his motion, but ultimately denied it. Over defense counsel's objection, the court consolidated the April and the October incidents for trial.

{¶5} A jury found Secriskey guilty on all counts. The court sentenced him to seven years in prison on his illegal manufacturing count and one year in prison on his remaining counts. The court ordered his sentences to run consecutively for a total of eight years in prison.

{¶6} Secriskey filed separate appeals in his two cases, and this Court consolidated the appeals for purposes of briefing, argument, and decision. The appeals are now before us and

raise two assignments of error for our review. For ease of analysis, we reorder the assignments of error.

## II.

## <u>ASSIGNMENT OF ERROR II</u>

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED DURING A WARRANTLESS SEARCH OF HIS DOMICILE.

**{¶7}** In his first assignment of error, Secriskey argues that the court erred by denying his motion to suppress. He argues that his Fourth Amendment rights were violated when the police entered his apartment in the absence of a warrant or exigent circumstances. We do not agree that the court erred when it denied Secriskey's motion to suppress.

**{¶8}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

**{¶9}** The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable * * * subject only to a few specifically established and

well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). "One such exception is a search based upon probable cause and the existence of exigent circumstances. A 'narrower subset' of the exigent circumstances exception is the emergency aid exception." (Internal citations omitted.) *State v. Armbruster*, 9th Dist. Summit No. 26645, 2013-Ohio-3119, ¶ 7. The emergency aid exception "allows the police 'to enter a dwelling without a warrant and without probable cause when they reasonably believe, based on specific and articulable facts, that a person within the dwelling is in need of immediate aid.'" *State v. Baker*, 9th Dist. Summit No. 23713, 2009-Ohio-2340, ¶ 6, quoting *State v. Gooden*, 9th Dist. Summit No. 23764, 2008-Ohio-178, ¶ 6.

{¶10} "[C]landestine methamphetamine laboratories pose a per se danger to occupants, officers, and the community, and law enforcement officers need only a reasonable belief that a structure contains a methamphetamine laboratory to justify a search under the emergency-aid exception * * *." *State v. Timofeev*, 9th Dist. Summit No. 24222, 2009-Ohio-3007, ¶ 26, citing R.C. 2933.33(A). "Probable cause, therefore, is not required for a warrantless entry if officers have a reasonable belief that [a] methamphetamine laboratory is being operated at a particular location." *Armbruster* at ¶ 8. "The existence of an active methamphetamine laboratory is, as a matter of law, an emergency which threatens life and limb that supports an objectively reasonable belief that immediate action is necessary to protect life or property." *Timofeev* at ¶ 26. *See also* R.C. 2933.33(A) (methamphetamine laboratory constitutes an exigent circumstance as a matter of law).

{¶11} The trial court determined that, when the police responded to Secriskey's apartment, they knew he had been admitted to the hospital for chemical burns to his face. They also knew that a child, who was unaccounted for at the time, resided at the apartment. The court

found that the police located three bottles outside the apartment that were consistent with the "one-pot method[]" of methamphetamine production. They also detected a chemical smell and observed that the windows to the apartment were open. The court found that the one-pot method can result in an explosion and that the officers were both aware of that possibility and unware "how long [any one-pot method bottles] had been in any state of manufacture" inside Secriskey's apartment. The court determined that the observations the officers made, combined with their safety concerns about a child and other nearby residents, their knowledge that a resident of the home had already been admitted to the hospital for chemical burns, and their training and experience with methamphetamine production, justified their warrantless entry into the apartment.

{¶12} Secriskey does not challenge any particular factual finding that the trial court made. Instead, he takes issue with the court's conclusion that there were exigent circumstances to justify the warrantless intrusion that occurred here. He notes that the police were on scene for nearly an hour before they entered his apartment, they had knocked on the surrounding apartments to ensure no one was home, and there was no evidence of a burning smell; just a chemical smell. Thus, he argues that, under the totality of the circumstances, no exigency existed and the police had time to secure a warrant.

{¶13} Accepting the trial court's factual findings as true, *see Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8, we cannot conclude that the search of Secriskey's apartment violated the Fourth Amendment. This Court has held that, to justify a warrantless entry, officers "need only a reasonable belief that a structure contains a methamphetamine laboratory * * *." *Timofeev*, 2009-Ohio-3007, at ¶ 26. The officers here found multiple bottles directly outside Secriskey's apartment that were consistent with the one-pot method of methamphetamine

production. There was a chemical odor in the air, and they were able to see that all of the windows to Secriskey's apartment were open. Further, they were aware that a resident of the apartment (Secriskey) had just been admitted to the hospital for chemical burns to his face. The officers were concerned that a child might be present in the apartment and that there was a safety risk to nearby residents and the officers themselves. The officers had no way of knowing whether the apartment contained additional methamphetamine laboratories that might explode if left unattended. *See id.* ("The combustible nature of methamphetamine laboratories poses a grave danger to occupants of the dwelling, neighbors, law enforcement and the community at large.") They, therefore, possessed an objectively reasonable belief that immediate action was necessary. *Id.*

{¶14} Moreover, there is no evidence that the police unduly delayed before entering the apartment. The first officer to arrive testified that he exited his cruiser, looked around, and knocked on Secriskey's apartment and the two surrounding apartments before his supervisor arrived. He then updated his supervisor, and his supervisor contacted the drug unit. There was testimony that members of the drug unit arrived less than an hour after the first officer on scene and they breached the apartment 20 to 30 minutes after their arrival. Given the foregoing, the trial court did not err when it concluded that their warrantless entry was objectively reasonable under R.C. 2933.33(A) and the Fourth Amendment. Consequently, Secriskey's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

**{¶15}** In his first assignment of error, Secriskey argues that his conviction for illegally manufacturing methamphetamine is based on insufficient evidence and is against the manifest weight of the evidence. We disagree.

**Sufficiency**

**{¶16}** A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. Summit No. 19600, 2000 WL 277908, *1 (Mar. 15, 2000). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

**{¶17}** "No person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.04(A). The term "manufacture" means to "make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production." R.C. 2925.01(J). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C.

2901.22(B). "Methamphetamine is a schedule II controlled substance." *State v. Gregory*, 9th Dist. Summit No. 27523, 2015-Ohio-4901, ¶ 18.

{¶18} Secriskey's co-defendant, his former girlfriend and the mother of his children, testified for the State pursuant to a plea agreement. She testified that she resided with Secriskey in April 2015 and that the two were frequent drug users at the time. She testified that Secriskey would make methamphetamine whenever he had the opportunity to do so and had previously made the drug at their apartment. During the early morning hours of April 12th, the two went to Walgreens and purchased pseudoephedrine pills and an instant cold pack so that they could produce methamphetamine. When they returned to their apartment, she went to take a shower, and Secriskey "started putting everything together."

{¶19} Secriskey's co-defendant testified that she was blow-drying her hair in the bathroom when she heard a "loud pop." Secriskey then ran into the bathroom, "screaming frantically," and tried washing his face in the sink. She testified that the two became alarmed because they knew Secriskey needed medical attention, but they feared the source of his burns would be questioned if they went to the hospital. On the way to the hospital, Secriskey decided that he would tell the hospital staff that he was injured while trying to make a "works bomb." Secriskey's co-defendant confirmed that Secriskey was not making a works bomb, but was, in fact, "making methamphetamine for [them] to use."

{¶20} Detective Dan Wagner testified that he was trained in investigating methamphetamine labs and responded to Secriskey's apartment in conjunction with his duties as a member of the Summit County Drug Unit. He explained the one-pot method for methamphetamine production and indicated that two-liter bottles are the most common vessels for producing methamphetamine in that manner. He confirmed that, outside Secriskey's

apartment, the police located three discarded bottles that were consistent with spent vessels used to produce methamphetamine via the one-pot method. Inside the apartment, the police found another bottle in the kitchen sink whose bottom was cracked and separated and whose contents had spilled onto the counter and an open counter drawer. The police also found pseudoephedrine, solvent, ammonium nitrate cold packs, muriatic acid, aluminum foil, plastic bottles, tubing, and coffee filters in the kitchen, all of which Detective Wagner testified are used to produce methamphetamine.

{¶21} Detective Wagner testified that the police also found a Walgreens receipt for the purchase of pseudoephedrine pills in Secriskey's apartment. The receipt was dated April 12, 2015, at 1:01 a.m. He stated that the police used the law enforcement database linked to the pharmacy to trace the purchase to Secriskey. He explained that Secriskey had to provide his driver's license to purchase the pills, so his information had been logged into the database at that time. He confirmed that pseudoephedrine is an essential component of methamphetamine production.

{¶22} Detective Wagner testified that a "very violent reaction" takes place inside of a vessel that is used to produce methamphetamine via the one-pot method. He indicated that the process is hazardous because it carries a risk of fire and explosion. He testified that the methamphetamine production results in a very unnatural, specific chemical odor. According to the detective, he recognized that odor in Secriskey's apartment when he arrived.

{¶23} Secriskey argues that his conviction for illegal manufacturing is based on insufficient evidence because, other than his purchase of pseudoephedrine, the State "presented no evidence linking [him] to the circumstantial evidence of the manufacture of drugs * * *." He does not take issue with the evidence that his apartment was located within 1,000 feet of a

school.   Accordingly, we limit our discussion to the evidence that he was knowingly manufacturing methamphetamine.

{¶24}   Viewing the evidence in a light most favorable to the State, we must conclude that the State set forth evidence from which a rational trier of fact could have concluded that Secriskey knowingly manufactured or was "otherwise engage[d] in any part of the production of a controlled substance."   R.C. 2925.04(A).   "Circumstantial evidence and direct evidence inherently possess the same probative value * * *."   *Jenks*, 61 Ohio St.3d 259 at paragraph one of the syllabus.   The State produced evidence that, several hours after purchasing pseudoephedrine, Secriskey was admitted to the hospital for chemical burns to his face.   It further produced evidence that his kitchen contained a wealth of items related to methamphetamine production.   Additionally, the police uncovered what appeared to be several spent one-pot method bottles outside his apartment and an exploded bottle in his kitchen sink.   Secriskey's co-defendant specifically testified that the two planned on producing methamphetamine that evening and that she went to take a shower while Secriskey began "putting everything together."   She also testified that, at some point after that, she heard a "loud pop" and watched as Secriskey came into the bathroom screaming and frantically attempting to wash his face.   There was testimony that the one-pot method involves a risk of explosion due to the volatile, chemical reaction that takes place inside of the bottle.   A rational trier of fact could have concluded that Secriskey was injured when the bottle he was using to produce methamphetamine exploded.   Accordingly, he has not shown that his conviction for illegal manufacturing is based on insufficient evidence.   His argument to the contrary lacks merit.

**Manifest Weight**

{¶25} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶26} Secriskey's manifest weight argument consists of a single line in which he notes that his weight analysis "is identical to the argument set forth under the prior section concerning the sufficiency of the evidence * * *." Yet, "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Secriskey has not challenged any of the evidence the State set forth as "unreliable or lacking credibility." *State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. This Court will not develop a manifest weight argument on his behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32. "We have already determined that his conviction is based on sufficient evidence, and [Secriskey] has not shown that this is the exceptional case where the trier of fact lost its way in convicting him." *State v. Taylor*, 9th Dist.

Summit No. 28091, 2016-Ohio-7953, ¶ 39. Accordingly, his first assignment of error is overruled.

III.

**{¶27}** Secriskey's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

WILLIAM A. VASILIOU II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.