[Cite as *State v. Gamble*, 2018-Ohio-895.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                  CASE NO. 16-17-02

     v.

BENJAMIN GAMBLE,                     O P I N I O N

     DEFENDANT-APPELLANT.

**Appeal from Wyandot County Common Pleas Court**
**Trial Court No. 16-CR-0056**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:   March 12, 2018**

APPEARANCES:

    *Howard A. Elliott* for Appellant

    *Eric J. Figlewicz* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant, Benjamin Gamble ("Gamble") appeals the judgment of the Wyandot County Common Pleas Court convicting him of one count of Illegal Assembly/Possession of Chemicals for Manufacture of Drugs and one count of Complicity for the Illegal Manufacture of Drugs, after a trial by jury. On appeal, Gamble asserts that the trial court erred: 1) by imposing a sentence on each of two charges despite the fact that the two charges had been merged after conviction; 2) by imposing a mandatory fine without considering his present and future ability to pay the mandatory fine; 3) by not dismissing the indictment where speedy trial time limits had been improperly exceeded; and 4) by failing to grant his motion to suppress due to his improper detention by law enforcement. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court, and remand this matter to the trial court for further proceedings consistent with this opinion.

*Factual & Procedural Background*

{¶2} On May 6, 2016, Gamble was arrested after law enforcement officers discovered methamphetamine ("meth") and materials to manufacture meth at his residence. On May 11, 2016, a two count indictment was filed in the Wyandot County Common Pleas Court against Gamble. (Doc. No. 1). Count I of the indictment alleged that Gamble knowingly assembled or possessed one or more

chemicals that may be used in the manufacture of a methamphetamine, with the intent to manufacture methamphetamine, a controlled substance, in violation of R.C. 2925.041(A), a felony of the third degree. (*Id.*). Count II of the indictment alleged that Gamble did knowingly aid or abet Andrew Robert Inman in committing the offense of Illegal Manufacture of Drugs, by manufacturing methamphetamine with said offense being committed in the vicinity of a juvenile, in violation of R.C. 2923.03(A)(2), a felony of the first degree. (*Id.*).

{¶3} Gamble was arraigned on the charges in the trial court and executed an affidavit of indigency during his arraignment. (Doc. Nos. 3; 14).

{¶4} On May 31, 2016, Gamble's court appointed attorney filed a waiver of speedy trial in the trial court. (Doc. No. 16). The waiver contained the signatures of Gamble and his attorney. (*Id.*).

{¶5} Approximately two weeks later, Gamble filed a motion to suppress in the trial court, alleging that he was improperly detained based upon an unreliable "tip." (*Id.*). The trial court held a suppression hearing and permitted each side to submit written closing statements to the court prior to issuing its decision. (Doc. Nos. 34, 35, 36). Thereafter, the trial court issued its judgment entry overruling the motion to suppress. (Doc. No. 36). Specifically, the trial court found that the "tip" given to law enforcement was reliable. (*Id.* at a-17).

{¶6} On November 14, 2016, Gamble's court appointed counsel filed a motion to withdraw as counsel, advising the trial court that Gamble had retained his own counsel. (Doc. No. 38). On that same date, Gamble's new counsel filed a notice of appearance in the trial court. (Doc. No. 38).

{¶7} Thereafter, Gamble filed an "allegation and affidavit of indigency" in the trial court. (Doc. No. 48). Specifically, Gamble asserted that he was indigent and not able to pay any mandatory fine in the case. (*Id.*).

{¶8} A jury trial was scheduled for March 14, 2017. (Doc. No. 54). However, on February 21, 2017, Gamble's counsel filed a new motion to suppress/motion in limine in the trial court. (Doc. No. 65). Further, and prior to the scheduled jury trial, Gamble also filed a motion to dismiss the indictment for violating his speedy trial right. (Doc. No. 75). Gamble alleged that he did not waive his right to a speedy trial and did not authorize his court appointed counsel to waive his speedy trial rights on his behalf. (*Id.*). In response, the State argued that a speedy trial waiver was filed by Gamble in the trial court on May 31, 2016 and Gamble failed to mention said waiver in his motion to dismiss. (Doc. No. 76). On March 2, 2017 the trial court issued its judgment entry on the motion to dismiss, finding it not well taken. (Doc. No. 77).

{¶9} Nevertheless, the day before his jury trial, Gamble filed a response to the trial court's judgment entry denying his speedy trial motion. (Doc. No. 85).

Gamble asserted that while a speedy trial waiver was on file, such waiver contained a "forged" signature. (*Id.*). The State responded and asserted that even if Gamble's signature was a "clever forgery," the waiver of speedy trial was valid because Gamble's court appointed counsel had waived Gamble's right to a speedy trial for purposes of trial preparation. (Doc. No. 88). The trial court scheduled a hearing on the speedy trial waiver issue. (Doc. No. 93).

{¶10} Gamble's jury trial commenced on March 14, 2017 as scheduled. However, during a recess in the proceedings the trial court conducted its hearing on Gamble's speedy trial issue. At the hearing, Gamble's court appointed counsel, Emily Beckley ("Beckley"), testified that she had Gamble sign a speedy trial waiver after explaining it to him at a pretrial. (3/16/2017 Tr., Vol. V, at 644-45). Beckley further testified that she signed the waiver after Gamble signed it. (*Id.* at 652). She also testified that the speedy trial waiver factored into her decision to file a motion to suppress on Gamble's behalf. (*Id.* at 652-53). The trial court found no issues with Gamble's waiver of speedy trial. (Doc. No. 96).

{¶11} Gamble's jury trial concluded with a finding of guilty on each count in the indictment. (Doc. No. 95). Further, and in regards to Count II, Complicity to Illegal Manufacture of Drugs, the jury found that Gamble committed the offense in the vicinity of a juvenile. (*Id.*). The trial court set Gamble's sentencing hearing for March 30, 2017.

{¶12} At Gamble's sentencing hearing, Gamble represented to the trial court that he wanted to fire his retained counsel. (Sentence, 3/30/2017 Tr. at 5). Gamble also requested additional time to retain another attorney prior to sentencing. (*Id.*). After a discussion with the trial court about his efforts to retain new counsel for sentencing and appeal, Gamble represented to the trial court that he would be able to retain counsel by April 13, 2017. (*Id.* at 10-11). Based on these representations, the trial court scheduled Gamble's sentencing hearing for April 13, 2017. (*Id.*).

{¶13} On April 13, 2017, Gamble appeared in the trial court for sentencing without counsel. (Sentence, 4/13/2017 Tr. at 3). Gamble informed the trial court that he was indigent and unable to hire an attorney. (*Id.*). As a result of this representation, the trial court had Gamble execute another affidavit of indigency. (*Id.*; Doc. No. 105). The trial court had standby counsel present (in the event that Gamble had not secured an attorney prior to sentencing) and after Gamble completed the affidavit of indigency in open court, the trial court appointed him a new attorney. (*Id.* at 4).

{¶14} Ultimately, the trial court sentenced Gamble to a prison term of thirty (30) months on Count I; and a mandatory prison term of eight (8) years on Count II. The trial court then merged Count I into Count II.[1] (*Id.* at 13-14). In addition to the prison term, the trial court also imposed a mandatory fine in the amount of $10,000.

---

[1] Both the State and defense counsel agreed that the sentence for Count I would "merge" into the sentence for Count II, as both offenses were allied offenses of similar import. (Sentence, 04/13/2017 Tr. at 11).

Case No. 16-17-02

(Doc. No. 106). The trial court journalized its sentence on April 14, 2017, reflecting the same. (*Id.*at 4-5). From this judgment entry Gamble appeals, and presents the following assignments of error for our review:

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED BY IMPOSING A SENTENCE ON EACH OF TWO CHARGES DESPITE THE FACT THAT THE TWO CHARGES HAD BEEN MERGED AFTER CONVICTION.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED BY IMPOSING A MANDATORY FINE WITHOUT CONSIDERING THE PRESENT AND FUTURE ABILITY OF THE APPELLANT TO PAY SAME AFTER A MOTION AND AFFIDAVIT OF INDIGENCY HAD BEEN FILED PRIOR TO THE SENTENCING HEARING.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED IN NOT GRANTING A DISMISSAL OF THE INDICTMENT WHERE SPEEDY TRIAL TIME LIMITS HAD BEEN EXCEEDED AND THE CONSEQUENCES OF ANY TIME WAIVER FILED HAD NOT BEEN ADEQUATELY EXPLAINED TO THE APPELLANT.**

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ERRED IN FAILING TO GRANT A MOTION TO SUPPRESS EVIDENCE WHERE THE APPELLANT HAD BEEN DETAINED AND NOT PERMITTED TO LEAVE THE SCENE WHERE SUCH ATTENTION WAS BASED ON CORROBORATED STATEMENTS OF A TIP GIVEN TO LAW ENFORCEMENT.**

*Appellant's First Assignment of Error*

{¶15} In his first assignment of error, Gamble argues that the trial court erred by imposing a sentence on each of two charges despite the fact that the two charges had been merged after conviction. For the reasons that follow, we agree.

*Standard of Review*

{¶16} "The Ohio Supreme Court has recognized that the 'imposition of multiple sentences for allied offenses of similar import is plain error.'" *State v. Jones,* 3rd Dist. Allen No. 1-11-60, 2012-Ohio-2694, ¶ 8 quoting *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31. "'When a defendant has been found guilty of offenses that are allied offense, R.C. 2941.25 prohibits the imposition of multiple sentences." *Id.* quoting *State v. Damron,* 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17. When a defendant has been found guilty of two or more allied offenses, the state must elect which offense it will pursue. *Id.* citing *State v. Harris,* 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882, ¶ 21. Thereafter, the trial court must merge the allied offenses into a single conviction and impose a sentence that is appropriate for the offense selected by the state for sentencing. *Id.*

*Analysis*

{¶17} In the instant matter, the record reveals that when the trial court inquired as to the issue of allied offenses and merger, the State and defense counsel

agreed with the trial court that any sentence imposed in Count I would merge into the sentence for Count II. (Sentence, 04/13/2017 Tr. at 11). Thereafter, the trial court sentenced Gamble to the following:

> [S]erve the basic prison [sic] of, to count one, of thirty months, and to count two, mandatory prison term of eight years, with count one merging into count two * * *.

(*Id.* at 13-14). The trial court reflected this sentence in its judgment entry of sentence. (Doc. No. 106 at 4).

{¶18} Nevertheless, we find that the trial court's sentence of Gamble does not comply with the statutory requirements of R.C. 2941.25,[2] which provides as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. As it is undisputed that Gamble's conduct constitutes two allied offenses of similar import, he may be convicted and sentenced to only one offense.[3]

---

[2] We note that the State concedes the same in their Appellate brief.

[3] *See generally, State v. Whitefield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12 (Ohio Supreme Court held that for purposes of R.C. 2941.25, a "conviction" consists of a guilty verdict *and* the imposition of a sentence or penalty).

{¶19} Thus, the proper procedure that should have been employed would have been for the trial court to permit the State to elect which allied offense to pursue on sentencing. *See generally, State v. Love,* 3rd Dist. Marion No. 9-13-09, 2014-Ohio-437, ¶ 46 (holding that the trial court erred by failing to direct the prosecutor to elect which charge they wanted to proceed with for purposes of sentencing). Because the trial court did not follow the requirements of R.C. 2941.25, we find reversible error.

{¶20} We further determine that at the sentencing hearing, the State must elect which allied offense it will pursue against Gamble. *See, State v. Whitefield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of the syllabus (holding that "upon finding reversible error in the imposition of multiple punishments for allied offenses, a court of appeals *must* reverse the judgment of conviction and remand for a new sentencing hearing, at which time the state must elect which allied offense it will pursue against the defendant).

{¶21} Accordingly, having found merit in Gamble's first assignment of error, we sustain this assignment and remand this matter to the trial court for further proceedings consistent with this opinion.

*Appellant's Second Assignment of Error*

{¶22} In his second assignment of error, Gamble argues that the trial court imposed a mandatory fine without first considering his present and future ability to

pay the fine. Specifically, Gamble argues that he adequately addressed his lack of ability to pay a mandatory fine by filing an affidavit of indigency prior to his sentencing hearing. For the reasons that follow, we agree.

*Standard of Review*

**{¶23}** "Ohio law does not prohibit a court from imposing a fine on an indigent defendant." *State v. Jacobs,* 189 Ohio App.3d 283, 2010-Ohio-4010, 938 N.E.2d 79, ¶ 11; R.C. 2929.18(B)(1). However, before imposing a financial sanction on a defendant, the trial court must consider the defendant's present and future ability to pay the amount of the sanction or fine. *Id.* While there are no specific findings that must be made by the trial court on the record, there must be some evidence in the record that the trial court considered the defendant's ability to pay. *Id.*

*Analysis*

**{¶24}** The record demonstrates that Gamble filed an affidavit of indigency on December 2, 2016. (Doc. No. 48). In his affidavit, Gamble specifically stated that he was indigent and unable to pay any mandatory fine in the case. (*Id.*). In support of his affidavit, Gamble attached a notarized financial disclosure/affidavit of indigency. (*Id.*).

**{¶25}** At sentencing, the trial court discussed Gamble's indigency for the purposes of retaining counsel to assist him with his sentence and appeal, but did not

discuss Gamble's present or future ability to pay a mandatory fine. (Sentence, 04/13/2017 Tr. at 4). The only other discussion on the record regarding Gamble's financial situation after his conviction also occurred at sentencing, wherein the trial court noted that:

> **[Gamble] owes restitution and costs on his past crimes, [and] show[s] no effort to make things right with his victim.**

(*Id.* at 13). While Gamble is not automatically entitled to a waiver of the mandatory fine just because he filed an affidavit of indigency, the record does not reflect whether the trial court *considered* Gamble's present or future ability to pay the mandatory fine prior to it being imposed. *See State v. Cain,* 3rd Dist. Union No. 14-05-40, 2006-Ohio-1779, ¶ 6 (finding that while a defendant is not automatically entitled to a waiver of a fine merely because he filed an affidavit of indigency, the trial court was required to consider the defendant's present and future ability to pay a mandatory fine).

{¶26} Thus, we find that the trial court did not consider whether Gamble was an indigent person unable to pay the mandatory fine.[4] Therefore, we sustain this assignment of error and reverse and remand this matter to the trial court for a determination as to Gamble's present and future ability to pay a mandatory fine.

---

[4] We note that the State concedes the same in their appellate brief.

<u>*Appellant's Third Assignment of Error*</u>

**{¶27}** In his third assignment of error, Gamble argues that the trial court erred by failing to bring Gamble to trial within the applicable statutory time limits. Specifically, Gamble argues that his court appointed counsel did not adequately explain the consequences of his speedy trial waiver, making the waiver inapplicable. For the reasons that follow, we disagree.

*Standard of Review*

**{¶28}** "Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq." *State v. King,* 3rd Dist. Marion No. 9-06-18, 2007-Ohio-335, ¶ 30. *See also, State v. DePue,* 96 Ohio App.3d 513, 516, 645 N.E.2d 745 (4th Dist.1994). "If any ambiguity exists, we construe the record in favor of the accused." *Id.*

**{¶29}** The applicable statutory speedy trial provision, R.C. 2945.71(C)(2), provides that a person charged with a felony shall be brought to trial within two hundred and seventy (270) days after the person's arrest. R.C. 2945.71(C)(2). In computing time under division (C)(2), "each day during which the accused is held in jail in lieu of bail on the pending charges shall be counted as three days." R.C. 2945.71(E).

**{¶30}** Further, R.C. 2945.73(B) provides:

> Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code.

R.C. 2945.73(B). "R.C. 2945.71 and R.C. 2945.73 are 'mandatory and must be strictly complied with by the State.'" *King* at ¶ 32, quoting *State v. Pudlock,* 44 Ohio St.2d 104, 105, 338 N.E.2d 524 (1975). "However, R.C. 2945.72 allows for an extension of the time that the accused must be brought to trial under certain circumstances." *Id.*

*Analysis*

**{¶31}** In the instant matter, Gamble's ninety-day[5] time period for speedy trial purposes commenced running on May 6, 2016, the date he was arrested by law enforcement. Gamble's trial did not commence until March 14, 2017, well outside the ninety (90) day time limit as set forth in the speedy trial statute. Thus, unless an exception applies to Gamble's situation, his right to a speedy trial may have been violated.

**{¶32}** The record reflects that on May 31, 2016, a "Waiver of Speedy Trial" ("waiver") was filed in the trial court in Gamble's case. This waiver states as follows:

> Now comes Defendant, Benjamin M. Gamble, *who hereby waives all time requirements* in which this matter must be held for trial as set forth in Section 2945.71 of the Revised Code of Ohio.

---

[5] As Gamble was in jail for the entire pendency of his case, R.C. 2945.71(E) applies to Gamble.

(Emphasis added.) (Doc. No. 16). The waiver contains the signatures of Gamble and his court appointed attorney, Emily Beckley.

{¶33} At the time Gamble's waiver was filed, twenty-six (26) days had run for speedy trial purposes. Such twenty-six (26) day period was within Gamble's ninety-day speedy trial time limit under R.C. 2945.73(B).

{¶34} Approximately ten months later, and two weeks prior to his scheduled jury trial, Gamble filed a motion to dismiss for violation of speedy trial. (Doc. No. 76). In that motion, Gamble asserted that he had not previously waived his right to a speedy trial, nor had he authorized his attorney to waive his speedy trial rights. (*Id.*). After receiving the State's response to Gamble's motion, the trial court overruled Gamble's motion, finding that Gamble had executed a speedy trial waiver and that he had "effectively waived his constitutional right to a speedy trial when he signed and filed a written time waiver." (Doc. No. 77).

{¶35} In response to the trial court's entry, Gamble filed a response to the judgment entry regarding speedy trial, asserting that the signature contained on the waiver was not his own but a "clever forgery" that resembled his signature, but was not, in fact, his. (*Id.*). The State again responded to Gamble's argument, and a hearing was set for March 16, 2017 on the issue of Gamble's speedy trial waiver. At the waiver hearing, Gamble and Beckley testified regarding the waiver. (03/16/2017 Tr., Vol. V, at 639). Gamble testified that he and Beckley discussed

-15-

the waiver issue, and he was under the assumption that he had 270 days to be convicted while incarcerated. (*Id.* 641). Gamble further testified that Beckley did not ask him to waive his speedy trial rights, and he did not sign any document waiving speedy trial. (*Id.* at 641-42). On cross examination, Gamble conceded that he and Beckley did have a discussion about a speedy trial time waiver, but he was not shown the time waiver form. (*Id.* at 643). Further, Gamble was unable to identify whose signature appeared on the waiver form. (*Id.*).

{¶36} Beckley testified that she represented Gamble from May, 2016 to November, 2016. (*Id.* at 645). Beckley testified that she discussed speedy trial issues with Gamble at his pretrial on May 31, 2016, and had him sign a speedy trial waiver after their discussion. (*Id.*). Beckley further testified that she personally witnessed Gamble sign the waiver, which she also signed. (*Id.* at 652). Finally, Beckley stated that the waiver played a part in Gamble's motion to suppress. (*Id.* at 653). Thereafter, the trial court overruled Gamble's speedy trial motion. (Doc. No. 96).

{¶37} From our review of the record, Gamble's third assignment of error fails on several levels. First, we note that even if Gamble's signature was not the signature contained on the waiver, "the Ohio Supreme Court has held that 'a defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the

defendant is bound by the waiver even though the waiver is executed without his consent.'" *King*, 3rd Dist. Marion No. 9-06-18, 2007-Ohio-335, ¶ 35 quoting *State v. McBreen*, 54 Ohio St.2d 315, 320, 376 N.E.2d 593 (1978). In the case *sub judice*, Beckley testified that she signed the time waiver with Gamble's motion to suppress in mind. As such, Gamble is bound by such waiver in this matter.

{¶38} Next, the record supports that there was an expressed written time waiver by Gamble filed prior to trial and Gamble never undertook the proper procedure to revoke it. Specifically, and to this requirement, we have previously determined that:

> Following an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time.

*State v. Clark,* 3rd Dist. No. 5-13-34, 2014-Ohio-4873, 23 N.E.3d 218, ¶ 48 quoting *State v. O'Brien,* 34 Ohio St.3d 7, 516 N.E.2d 218 (1987), paragraph two of the syllabus. The record before us reveals that Gamble never filed a formal written objection to any further continuance at any point during the pendency of his trial. As such, since Gamble failed to revoke his express written waiver of unlimited duration, he is not entitled to a discharge for the delay in bringing him to trial.

{¶39} Finally, even though Gamble testified that he never signed the waiver and was under the (incorrect) assumption that he had to be brought to trial within

270 days, the trial court was not obligated to accept such testimony as true as it was within the trial court's province to determine witness credibility as to what transpired during the time waiver process. *See generally, State v. Bostock,* 4th Dist. Athens No. 11CA23, 2012-Ohio-3324, ¶ 13. In our review, the trial court found that the signature appearing on the waiver looked the same or similar to Gamble's other signatures in the file. (Doc. No. 96). Moreover, the trial court was cognizant of Gamble's potential gain should his testimony result in the dismissal of the charges. (*Id.*). Thus, it was within the purview of the trial court to determine that Beckley's testimony was more credible than Gamble's when it denied the speedy trial motion to dismiss.

**{¶40}** For these reasons, we overrule Gamble's third assignment of error.

*Appellant's Fourth Assignment of Error*

**{¶41}** In his fourth assignment of error, Gamble argues that the trial court erred by failing to grant his motion to suppress evidence. Specifically, Gamble argues that his statements to law enforcement and his consent to search his property were improperly obtained because his detention was based upon an uncorroborated tip.[6] For the reasons that follow, we disagree.

---

[6] While Gamble specifically states his fourth assignment of error as: "[t]he trial court erred in failing to grant a motion to suppress evidence where the Appellant had been detained and not permitted to leave the scene where such attention [sic] was based on *corroborated* statements of a tip given to law enforcement," the gist of Appellant's argument is that law enforcement did not corroborate the tip, making it insufficient to establish reasonable suspicion. (*See,* Br. Of Appellant at 16).

*Standard of Review*

**{¶42}** "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact." *State v. Sandor,* 9th Dist. Summit No. 23353, 2007-Ohio-1482, ¶ 5. "The trial court acts as the trier of fact during a suppression hearing and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact." *Id.* citing *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2nd Dist.1996). "Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence." "'The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo.'" *Id.* quoting *State v. Russel,* 127 Ohio App.3d 414, 416, 713 N.E.2d 56 (9th Dist.1998).

*Analysis*

**{¶43}** While somewhat confusing, Gamble argues that even though an identified informant tipped law enforcement to the meth production at his residence, police corroboration (of that tip) was required to detain Gamble when he exited his trailer. Appellant further argues that because the tip was not corroborated by police, his detention resulted in his incriminating statements and consent to search being the "fruit of the poisonous tree," and therefore subject to suppression. We find such argument misplaced.

**{¶44}** At the outset, we note that at a suppression hearing, the State generally bears the burden of proving that a warrantless search or seizure meets Fourth Amendment standards of reasonableness. *Maumee v. Weisner,* 87 Ohio St.3d 295, 297, 1999-Ohio-68, 720 N.E.2d 507. "The proscriptions of the Fourth Amendment impose a standard of reasonableness upon the exercise of discretion by government officials." *Id.* at 299. "'Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests.'" *Id.* quoting *Delaware v. Prouse,* 440 U.S. 648, 653-54, 99 S.Ct. 1391 (1979). "To justify a particular intrusion, the officer must demonstrate 'specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).

**{¶45}** To satisfy their burden at the suppression hearing held in the trial court, the State produced testimony from the following individuals: Deputy Edwin Gottfried ("Dep. Gottfried") of the Wyandot County Sheriff's Office; Detective Jared Lucas ("Det. Lucas") of the Upper Sandusky Police Department; Officer Jordan Breece ("Officer Breece") of the Upper Sandusky Police Department; and Detective Sergeant Kerwin Wisely ("Sgt. Wisely") of the Wyandot County Sheriff's Office.

*Dep. Gottfried's Testimony*

**{¶46}** Dep. Gottfried testified that the Wyandot County Sheriff's Office was investigating Gamble prior to May 6, 2016 for purchasing large amounts of pseudoephedrine, the main ingredient in meth. (Mot. to Suppress Hr'g, 08/23/2016 Tr. at 11; 21). Dep. Gottfried testified that law enforcement officials have access to an on-line program that permits law enforcement to monitor purchases of pseudoephedrine within the community. (*Id.* at 7). And, because of Gamble's large purchases of pseudoephedrine at the end of April, 2016, Gamble was placed on a "watch" list by law enforcement. (*Id.*). Furthermore, Dep. Gottfried testified that Gamble was "blocked" from purchasing pseudoephedrine from two separate locations on April 22, 2016.[7] (*Id.* at 13). However, on May 4, 2016 (two days prior to the tip leading to Gamble's arrest), Gamble was able to successfully purchase additional amounts of pseudoephedrine. (*Id.* at 12). Dep. Gottfried testified that Gamble was the top purchaser of pseudoephedrine in the city of Upper Sandusky, which indicated (to law enforcement) that Gamble could be involved in manufacturing meth. (*Id.* at 15). Dep. Gottfried also testified that Gamble's pseudoephedrine purchasing activity led law enforcement from both the Upper Sandusky Police Department and the Wyandot County Sheriff's Office into

---

[7] Had Gamble successfully purchased the pseudoephedrine, he would have exceeded the allotted grams any one individual can purchase in a month. (Mot. to Suppress Hr'g, 08/23/2016 Tr. at 13).

discussions of conducting surveillance of Gamble's residence and consideration of trash pulls. (*Id.* at 16).

*Det. Lucas' Testimony*

**{¶47}** Det. Lucas testified that on May 6, 2016, the Upper Sandusky Police Department received a phone call reporting possible meth production at a trailer park located at 1049 N. Warpole St., in Upper Sandusky, Ohio. (*Id.* at 23). The caller reported that she was a friend of Kendra Billock ("Billock"), and that Billock told her of possible meth production activity at the aforementioned address. (*Id.*). During that phone call to police, Billock was with the caller and could be heard in the background. (*Id.*). However, to gain more information, Det. Lucas agreed to meet Billock and her friend in the parking lot of 1049 N. Warpole St. (*Id.*).

**{¶48}** After arriving at the parking lot, Det. Lucas spoke with Billock about the drug activity she witnessed. (*Id.* at 24). Billock reported that she lived at 1049 N. Warpole St., Lot #50 prior to May 6, 2016, but moved out because of excessive heroin use and discussions of producing meth within the residence. (*Id.*). Billock told Det. Lucas that she returned to the residence earlier that day (May 6, 2016) to pick up her remaining belongings and saw Gamble exit the rear of the trailer (located at lot #50), wearing a green rubber glove. (*Id.*). Billock told Det. Lucas that Gamble advised her to come back after 6 p.m. (to pick up her belongings) because "they [were] doing it," referring to making meth. (*Id.* at 25). Billock informed Det. Lucas

that she smelled an "odd odor" coupled with the strong odor of incense at the trailer. (*Id.* at 26). Billock told Det. Lucas that she believed Gamble was burning incense to hide the smell of meth. (*Id.*). Billock gave Det. Lucas a written witness statement, indicating that Gamble was making meth to "pay rent." (*Id.* at 29; State's Ex. B). Billock's statement also revealed that "the trailer was full of smoke, and they told me they had a bunch of incense burning to cover up the smell." (*Id.* at 31). Billock did not sign her statement, *nor did a witness or police officer sign the statement.* (*Id.* at 77).

**{¶49}** Det. Lucas further testified that as a result of Gamble's pseudoephedrine purchase history and Billock's statements, the Upper Sandusky Police Department sought a search warrant of Gamble's residence. (*Id.* at 29). Det. Lucas also testified that the Bureau of Criminal Investigation ("BCI") was contacted regarding the possible clandestine lab. (*Id.*). BCI reported that their clandestine laboratory unit was going to respond to the location, and advised law enforcement not permit anyone to enter the residence. (*Id.*).

**{¶50}** Det. Lucas further testified that while he worked to secure a search warrant for the residence, two police officers went to Gamble's residence and knocked on the door, but no one responded. (*Id.* at 33). Det. Lucas also testified

that shortly thereafter, Gamble called the Upper Sandusky Police Department and informed law enforcement that he was not home.[8] (*Id.* at 36).

*Officer Breece's Testimony*

**{¶51}** Officer Breece testified that he was on duty on May 6, 2016. (*Id.* at 44). On that date he was dispatched to 1049 N. Warpole Rd., Lot # 50 for possible narcotics activity or fire. (*Id.*). Prior to arriving at Gamble's residence, Officer Breece was informed by Det. Lucas that the person living at the residence had "maxed out" their pseudoephedrine purchase limit. (*Id.*). After arriving at Gamble's trailer, Officer Breece knocked on the door, but no one answered. (*Id.* at 44). However, neighbors in the area confirmed to Officer Breece that people were inside the trailer. (*Id.* at 45). Officer Breece testified that while he waited for someone to respond to his knocking prompts, Det. Lucas advised him of Billock's information. (*Id.*). Ultimately, and after approximately 45 minutes of knocking on the door, Gamble answered and was detained by Officer Breece. (*Id.* at 46). Officer Breece testified that Gamble was cooperative and consented to a search of his person for officer safety. (*Id.* at 48). Gamble was then placed in Breece's patrol vehicle awaiting the arrival of Sgt. Wisely. (*Id. a*t 49). Officer Breece stated that after Sgt. Wisely arrived, he (Wisely) removed Gamble from the back of the cruiser and read

---

[8] Det. Lucas also testified that law enforcement found meth and chemicals involved in the making of meth after they searched Gamble's trailer. (Mot. to Suppress Hr'g, 08/23/2016 Tr. at 37). Further, Det. Lucas testified that BCI Agent Andrew Webb located a pair of rubber gloves in the trash can at Gamble's residence. (*Id.* at 42). We find these discoveries important as to the reliability of Billock's tip.

him his *Miranda* rights. (*Id.* at 50). Officer Breece testified that prior to Sgt. Wisely's arrival, no one spoke with Gamble about meth or possible meth production inside the residence. (*Id.* at 50).

### *Sgt. Wisely's Testimony*

**{¶52}** After *Mirandizing* Gamble, Sgt. Wisely interviewed Gamble about the reported "meth lab" inside the residence. (Mot. to Suppress Hr'g, 09/08/2016 Tr. at 85-86). Gamble denied the presence of a "meth lab" and told Sgt. Wisely that two other people were in the trailer. (*Id.* at 86). Nonetheless, Gamble consented to law enforcement officials to enter the residence, and signed a "Consent to Search" form.[9] (*Id.* at 88; State's Ex. D). Sgt. Wisely testified that law enforcement officers found meth in Gamble's residence. (*Id.* at 89). After the meth was located, Sgt. Wisely revisited the "Consent to Search" form with Gamble, who again signed the form granting continuing permission to law enforcement officials to search the residence. (*Id.*).

### *Identified Tipster/Corroborated Statements*

**{¶53}** Gamble acknowledges that Billock's tip was not anonymous, but asserts that the police were still required to corroborate her tip. And because law enforcement officers never observed smoke coming from the trailer, they failed to corroborate Billock's statements making Gamble's statements and his consent to

---

[9] Because Gamble signed a "Consent to Search" form, no search warrant was obtained for the residence.

search subject to suppression. In support, Gamble directs us to *State v. Vaughn,* for the proposition of law that police must corroborate an identified tipster's statements to survive a motion to suppress. (Br. Of Appellant at 16); *State v. Vaughn,* 8th Dist. Cuyahoga No. 90551, 2008-Ohio-4585. However, we find Gamble's reliance on *Vaughn* to be misplaced because in *Vaughn, "an unknown male* approached Officer Lundy's zone care and informed him that some males were getting ready to fight across the street from the gas station and that someone had a gun." (Emphasis added.). *Id.* at ¶ 4. After receiving the tip from the unknown male, Officer Lundy drove to the location and corroborated the unknown male's statements. *Id.* at ¶ 5.

**{¶54}** In the instant matter, the law enforcement officials arriving at Gamble's residence were acting, in part, upon a tip from Billock, *an identified tipster*. In such regard, the Ohio Supreme Court has held that:

> an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: 'If an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of his knowledge unnecessary.'

*Weisner,* 87 Ohio St.3d 295, 300, 1999-Ohio-68, 720 N.E.2d 507. Even though Billock had some prior criminal history, her report of criminal activity at Gamble's residence corroborated the suspicions of law enforcement (i.e. excessive purchases of pseudoephedrine) that Gamble was involved in the manufacture of meth. Thus, the facts herein are distinguishable from those presented in *Vaughn*.

{¶55} Moreover, under the totality of the circumstances herein, the State met their burden to prove that Gamble's detention met Fourth Amendment standards of reasonableness to justify their particular intrusion. We are not persuaded by Gamble's argument that Billock's tip to law enforcement was uncorroborated. The State's evidence of Gamble's pseudoephedrine purchase activity in the days prior to his arrest, coupled with Billock's first hand report of meth production by Gamble, leads us to the reasonable inference that meth was being manufactured in the residence, warranting Gamble's detention when he exited his residence. Moreover, Gamble's conduct upon officers' arrival at his residence prior to his detention (lying to law enforcement about not being home, and then exiting the residence approximately 45 minutes after officer's initial arrival) represents a reasonable and articulable suspicion for law enforcement to detain Gamble. As such, we find Gamble's detention was reasonable, and his statements made to law enforcement officers after being *Mirandized* together with his consent to search his property were not subject to suppression.

{¶56} For the aforementioned reasons, we overrule Gamble's fourth assignment of error.

### *Conclusion*

{¶57} Having found error prejudicial to Gamble herein in the particulars assigned and argued, we sustain Gamble's first and second assignments of error and

Case No. 16-17-02

overrule Gamble's third and fourth assignments of error.  This matter is remanded to the Wyandot County Common Pleas Court for proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**SHAW and PRESTON, J.J., concur.**

**/jlr**